**UNITED STATES of America, Appellant,**

v.

**Don KING and Don King Productions, Inc., Defendants–Appellees.**

**No. 1042, Docket 97–1495.**

United States Court of Appeals, Second Circuit.

Argued Sept. 11, 1997.

Decided Oct. 1, 1997.

---

Baruch Weiss, New York City, Assistant United States Attorney, Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, Christine H. Chung, Laura Grossfield Birger, Assistant United States Attorneys, on the brief), for Appellant.

Peter E. Fleming, New York City (Curtis, Mallet–Prevost, Colt & Mosle, Benard V. Preziosi, Jr., Michael Quinn, on the brief), for Defendant–Appellee King.

William H. Murphy, Jr., New York City (William H. Murphy, Jr. & Associates, William H. Murphy, III, Anthony B. Covington, Deborah Liu, on the brief), for Defendant–Appellee Don King Productions, Inc.

Before: WINTER, Chief Judge, FEINBERG and NEWMAN, Circuit Judges.

FEINBERG, Circuit Judge:

The government appeals from an order of the United States District Court for the Southern District of New York, Lawrence M. McKenna, J., dismissing for prosecutorial vindictiveness a superseding indictment as to defendant Don King Productions, Inc. (the "Corporation") obtained after the trial on the original indictment, which charged only defendant Don King individually, ended in a mistrial. The district court found that the indictment of the Corporation constituted an enhancement of the potential penalties faced by King, the Corporation's 100% shareholder. The court ruled that because of the circumstances surrounding the mistrial this enhancement raised a presumption of vindictiveness, which the government failed to rebut. For reasons set forth below, we reverse.

## I. Background

Defendant King is · a well-known boxing promoter who operates his business by means of the wholly-owned Corporation, which also holds the various licenses from state athletic commissions that are needed to

engage in the promotion of boxing matches. In 1991, King obtained (through the Corporation) a $750,000 insurance policy from a syndicate of Lloyd's of London underwriters, hereafter referred to as the Insurer. The policy insured the Corporation against certain losses in the event that a scheduled boxing match between Julio Cesar Chavez and Harold Brazier was cancelled due to the non-appearance of one of the boxers. Shortly before the fight Chavez was injured while sparring, and the fight was postponed. After the postponement, the Corporation filed a claim with the Insurer for over $670,000 and submitted documents to support this claim, including what purported to be the contract between Chavez and King regarding promotion of the Chavez–Brazier fight.

In July 1994, King was indicted on nine counts of violation of the wire-fraud statute, 18 U.S.C. § 1343, in connection with this insurance claim. Particularly at issue is language typed at the bottom of the first page of the contract submitted to the Insurer, which reads in relevant part "$350,000.00 for maintenance non-refundable training expenses hereby acknowledged and received by JULIO CESAR CHAVEZ" (the "Rider"). The government alleges that King added this language to the contract after the injury to Chavez in order to convince the Insurer (falsely) that King had paid Chavez $350,000 in non-refundable money, for which King was now entitled to reimbursement under the policy. The government claims that King and Chavez had not made this arrangement, and that a payment by King to Chavez, which King used to support part of the insurance claim, was considered by both King and Chavez to be a loan. It further alleges that loans, being refundable, are not covered by the policy. King disputes, among other things, the government's interpretation of both the terms of the contract between King and Chavez and the scope of coverage of the insurance policy, and asserts that no fraud took place. Significantly for our purposes, at trial King also disclaimed personal involvement in the preparation of the insurance claim. Although the same facts would have supported an indictment of the Corporation, the government decided not to indict the

Corporation at the time it originally charged King.

Jury selection for the trial began on September 21, 1995 and the jury began to deliberate on November 13. On November 15, one juror (who was African–American) reminded the court that she had long-standing plans to leave the country on November 17. The juror had informed the court of these plans at the outset of jury selection and had been left on the jury in the hope that the trial would conclude by then, and with the assurance of Judge McKenna that she would be able to go on the trip. On November 16, the jury indicated that a majority of jurors felt the jury was "irretrievably deadlocked."

Citing both the deadlock and the impending loss of an African–American member of the jury, King moved for a mistrial on November 16, 1995. The prosecution objected to a mistrial and instead requested an *Allen* charge. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). With respect to the imminent departure of one juror, the prosecution suggested that deliberations could continue with eleven jurors, pursuant to Fed.R.Crim.P. 23(b). Judge McKenna decided not to give an *Allen* charge and instead to discharge the jury. At the request of the government, Judge McKenna delayed discharging the jury so that the prosecution could seek a writ of mandamus ordering him to give an *Allen* charge.

That afternoon the parties appeared before Judge Mahoney of this court, who set the matter for argument before the next day's regularly-scheduled panel and asked Judge McKenna to await the panel's determination. Later that evening, the prosecution withdrew its mandamus petition, explaining to Judge Mahoney that it could not meet the standard for a writ of mandamus. The next morning, November 17, Judge McKenna indicated that since the petition for a writ of mandamus had been withdrawn, he was ready to discharge the jury. The prosecution stated that, in light of a press report it had received the previous night indicating that certain jurors had discussed the case with an alternate, it now joined in the motion for a mistrial. The

judge declared a mistrial and the jury was discharged.

In March 1997, after the judge had denied King's post-trial motion for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c), the government obtained a superseding indictment, which contained the same nine counts against King but added the Corporation as a defendant on seven of the counts. Thereafter, King and the Corporation moved to dismiss the indictment as to the Corporation for prosecutorial vindictiveness.

In an opinion filed in August 1997, Judge McKenna found no evidence of actual vindictiveness on the part of the prosecution. However, he held that the circumstances of the mistrial gave rise to a rebuttable presumption of vindictiveness with respect to the added charges, found that the government had failed to rebut the presumption and, accordingly, dismissed the indictment as to the Corporation. King remains a defendant.

This appeal by the government followed. We expedited the appeal because commencement of the retrial is imminent.

## II. Discussion

The doctrine of prosecutorial vindictiveness has its roots in two Supreme Court decisions: *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In the former case, Pearce successfully appealed a conviction and was retried on the same charges. He was convicted again, and received a longer sentence than at his first trial. The Supreme Court held that such an increase in sentence, unless supported by independent reasons in the record, violates due process because it appears to penalize a defendant for exercising his right to appeal. In *Blackledge*, the defendant exercised a state-law right to retrial de novo of his misdemeanor conviction. Before retrial, the prosecution indicted the defendant on a felony charge based on the same conduct. The Supreme Court, applying the reasoning of *Pearce*, held that this prosecutorial conduct also violated due process. Actual vindictiveness must play no part in a prosecutorial or

sentencing decision and, "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of [his rights]," the appearance of vindictiveness must also be avoided. *Pearce*, 395 U.S. at 725, 89 S.Ct. at 2080; *Blackledge*, 417 U.S. at 28, 94 S.Ct. at 2102–03.

This need to avoid the appearance of vindictiveness has taken the form of a presumption of prosecutorial vindictiveness, *United States v. Goodwin*, 457 U.S. 368, 373, 102 S.Ct. 2485, 2488–89, 73 L.Ed.2d 74 (1982), applied when (but only when) the circumstances of a case pose a "realistic likelihood" of such vindictiveness, *Blackledge*, 417 U.S. at 27, 94 S.Ct. at 2102. When the presumption is applied, it may be rebutted "by objective evidence justifying the prosecutor's action." *Goodwin*, 457 U.S. at 376 n. 8, 102 S.Ct. at 2490 n. 8. Otherwise, the tainted action must be thrown out.

■ A vindictive motive "will be found where there is direct evidence of actual vindictiveness, or a rebuttable presumption of a vindictive motive may arise under certain circumstances." *United States v. White*, 972 F.2d 16, 19 (2nd Cir.1992). See also *Lane v. Lord*, 815 F.2d 876, 879 (2nd Cir.1987); *United States v. Contreras*, 108 F.3d 1255, 1262 (10th Cir.1997). Judge McKenna found no evidence here of actual vindictiveness on the part of the prosecution, a finding with which we agree. The Corporation can prevail, therefore, only if vindictiveness can be presumed from the facts of this case and the government failed to rebut this presumption.

### A. Presumption of Vindictiveness

In this circuit, we have declined to apply a presumption of vindictiveness to a superseding indictment following a mistrial to which the government consented. *United States v. Khan*, 787 F.2d 28 (2nd Cir.1986). We have also declined to presume vindictiveness when the superseding indictment after a mistrial does not expose the defendant to a greater term of imprisonment. *Lane v. Lord*, 815 F.2d 876.

■ We note that a mistrial following a jury deadlock is commonplace. Our decision

in *Lane v. Lord* makes clear that simply adding charges after a mistrial does not, in itself, raise the realistic likelihood of vindictiveness contemplated by *Blackledge*. Here, Judge McKenna found that the circumstances of this mistrial removed it from this general rule. The government challenges this ruling.

The government argues that after its "short-lived" opposition it consented to the mistrial here on the grounds of possible juror misconduct, and that under *Khan* no presumption should apply. King, by contrast, characterizes the intensity of the prosecution's opposition to the mistrial as "unprecedented." Judge McKenna stated that the prosecution's consent came after he had decided to grant King's mistrial motion and did not, therefore, negate its earlier opposition to a mistrial.

In *Khan* we expressed no opinion on whether government opposition to a mistrial motion gave rise to a presumption of vindictiveness. 787 F.2d at 33. Because the government here withdrew its opposition between November 16 and 17, arguably we are still not faced with that situation. If, by the morning of November 17, the government agreed that a mistrial was a necessity then "[i]t is difficult to see how [declaration of a mistrial] would prompt a prosecutor to act vindictively towards a defendant." *Id.*

However, the issue is not simply whether the government initially opposed the mistrial, but rather whether the "totality of the objective circumstances," makes it likely that the superseding indictment was sought in retaliation for King's invocation of a permitted procedure. *Contreras*, 108 F.3d at 1263. King argues that the prosecution sought a superseding indictment only because he had moved for a mistrial, and that the addition of the Corporation as a defendant greatly enhances his exposure to financial loss as a result of imposition of criminal penalties. The government argues, in disagreement with *United States v. Motley*, 655 F.2d 186, 189 (9th Cir.1981), that no presumption of vindictiveness arises where the mistrial was caused by the deadlocked jury, rather than the defendant, and also contends that a presumption is unwarranted because the government ultimately consented to the mistrial motion, after learning of discussions between jurors and an alternate juror.

Preliminarily, we note that it is open to question whether the exposure of a corporation to criminal fines creates the type of consequence for the corporation's sole shareholder that can ever give rise to a valid claim of vindictive prosecution. Because the Corporation holds the licenses under which King operates his business as a promoter, King maintains that a conviction of the Corporation would result in revocation of those licenses and deprive him of his livelihood. The government responds that a conviction of King as an individual would most likely have the same result.

King also points out that the Corporation is subject to higher fines than King individually, and that as a 100% shareholder he will bear the brunt of this financial penalty. Compare United States Sentencing Guidelines, § 5E1.2 (fine schedule for individuals) with §§ 8C2.4–6 (fine schedule for organizations). The government, surprisingly, concedes this point, acknowledging that as a practical matter King will pay any fines levied against the Corporation, and choosing instead to argue that the increase is not "grossly disproportionate" to the prior indictment. See *United States v. Pignatiello*, 628 F.Supp. 68 (D.Colo.1986). However, it is not clear to us that depriving a corporation of an asset (be it money or a license) is, for the purposes of prosecutorial vindictiveness analysis, equivalent to penalizing even a 100% shareholder of a corporation. Nor do we think a shareholder should so easily be able to disregard the corporate form when it suits his purposes. If the government were attempting to pierce the corporate veil to hold King personally liable for the acts of his corporation, we doubt that King would be arguing the inconsequentiality of corporate structure. King implicitly took the position at his trial that he is shielded from liability for corporate acts by his defense that if a fraud occurred, someone else at the Corporation was responsible for it.[1]

---

1. For example, in his opening argument at the trial, King's defense counsel stated that

■ However, because we hold below that the government has demonstrated a non-vindictive motive sufficient to overcome any presumption, we need not resolve any of these issues—including whether King can complain about the exposure of the Corporation to fines, whether new charges following a mistrial resulting from a hung jury can give rise to a presumption of vindictiveness, and whether the government's joining in the mistrial motion precluded such a presumption. We will assume, without deciding, that a presumption of vindictiveness was justified, and turn now to the government's effort to rebut this presumption. See *Texas v. McCullough*, 475 U.S. 134, 141, 106 S.Ct. 976, 980, 89 L.Ed.2d 104 (1986).

B. Rebutting the Presumption of Vindictiveness

■ A presumption of vindictiveness may be rebutted. *McCullough*, 475 U.S. at 141, 106 S.Ct. at 980 ("Nothing in *Pearce* is to be read as precluding a rebuttal of intimations of vindictiveness."). King argues that since it was not impossible for the government to indict the Corporation at the outset it is precluded from doing so now (the "impossibility standard"). King points out that the Supreme Court in *Blackledge*, after holding that the state could not respond to Perry's appeal by bringing a more serious charge, noted that "[t]his would clearly be a different case if the State had shown that it was impossible to proceed on the more serious charge at the outset." 417 U.S. at 29 n. 7, 94 S.Ct. at 2103 n. 7. The Fifth Circuit, in *United States v. Krezdorn*, 718 F.2d 1360, 1363 (5th Cir.1983) (in banc), apparently took this to mean that to rebut vindictiveness a prosecutor must show that it was impossible to bring the added charges before the first trial. We disagree with this impossibility standard, and read *Blackledge* to mean simply that impossibility is one, but not the only, way to rebut a presumption of prosecutorial vindictiveness. Indeed, if impossibility were the standard, prosecutors would be motivated to include all possible charges in every indictment, a result we do not wish to promote.

■ A presumption of vindictiveness may be rebutted with a showing of "legitimate, articulable, objective reasons" for the superseding indictment. *Contreras*, 108 F.3d at 1263. "[T]he burden is shifted to the prosecutor to show that his decisions were justified by independent reasons or intervening circumstances which dispel the appearance of vindictiveness." *United States v. Griffin*, 617 F.2d 1342, 1347 (9th Cir.1980). See also *United States v. Motley*, 655 F.2d at 188 n. 1. When the government meets its burden of showing that its actions are the result of non-vindictive motivations, a defendant's right to move for a mistrial should not properly be regarded as chilled for purposes of applying the doctrine of prosecutorial vindictiveness. Although defendants may be reluctant to exercise that right for fear that the government will apply what it learned at the first trial to the defendant's detriment, that is not a fear the doctrine is designed to eliminate. *United States v. Punelli*, 892 F.2d 1364, 1372 (8th Cir.1990) (taking advantage of evidence elicited at first trial is not a vindictive motive for seeking a superseding indictment after mistrial).

We think the government has clearly shown a valid prosecutorial reason for indicting the Corporation that dispels any appearance of vindictiveness: the government sought to increase the likelihood that at least one of the defendants would be convicted. When King was first indicted, the government reasonably believed that King's defense would consist of denying that the misrepre-

---

[King] doesn't do everything by himself. He does what he does best and leaves other things which are necessary to this business to those he employs. One of the things he leaves to somebody else is insurance.

Counsel also said, in reference to the alleged altered contract, "I am afraid the guy who made up this, I'm sorry, fouled it up a little bit."

On cross-examination, King agreed that if the Rider was added to the contract it was done without his authorization or knowledge, and that adding the language to the contract after the injury to Chavez, and submitting the altered contract to the Insurer would have been "wrong" and "deceptive."

The defense closing argument also emphasized that other employees of the Corporation were involved in the insurance claim.

sentations charged in the indictment had been made. In those circumstances, an indictment of the Corporation would not have increased the likelihood of obtaining a conviction: the jury would either believe the government's theory and convict both King and the Corporation, or believe King and acquit both. At trial, however, King's defense attorney made statements during the opening and closing arguments, and King gave answers under cross-examination, which would have been consistent with a jury finding that a fraud had occurred but that someone at the Corporation other than King was responsible for it. See note 1, supra. The government asserts—and we believe the record shows—that it indicted the Corporation after the mistrial in order to give the jury in a retrial a reasonable basis for a split verdict (acquittal of King and conviction of the Corporation). Under the circumstances, dismissal of the indictment for prosecutorial vindictiveness was unwarranted.[2]

 King argues that having originally sought to avoid a split verdict, the government should not now be permitted to pursue one. We disagree. Although a defendant is entitled to be free from retaliation after an appeal or mistrial, he cannot legitimately expect that the government will not learn from the first trial. *United States v. Wall,* 37 F.3d 1443, 1449 (10th Cir.1994); *Punelli,* 892 F.2d at 1372; *Motley,* 655 F.2d at 190–191.

On the record before us, we think the government has adequately rebutted any presumption of vindictiveness that might be deemed to apply in this case. The events at King's first trial reasonably convinced the prosecutors that an indictment of King's corporation would improve their chances of getting the jury to convict at least one of the defendants. The superseding indictment was the result of prosecutorial strategizing, not prosecutorial vindictiveness. It was not, therefore, improper to add the corporate defendant, a party that we expect will be tried in a joint trial with its controlling shareholder.

We reverse the order of the district court dismissing the indictment against the Corporation and remand for further proceedings consistent with this opinion.

---

**2.** We of course express no view as to whether conviction of either King or the Corporation is

warranted at the retrial.