UNITED STATES of America, Appellant,

v.

Don KING and Don King Productions,
Inc., Defendants–Appellees.

Docket No. 97–1615.

United States Court of Appeals,
Second Circuit.

Argued Dec. 1, 1997.

Decided Jan. 26, 1998.

Baruch Weiss, Asst. U.S. Atty., New York
City (Mary Jo White, U.S. Atty., Laura
Grossfield Birger, Christine H. Chung, Asst.
U.S. Attys., New York City, on the brief), for
appellant.

Peter E. Fleming, Jr., New York City (Benard V. Preziosi, Jr., Michael Quinn, Curtis, Mallet–Prevost, New York City, on the brief), for defendant-appellee Don King.

William H. Murphy, Jr., Baltimore, MD (Anthony B. Covington, Deborah Liu, William H. Murphy, Jr. & Associates, Baltimore, MD, on the brief), for defendant-appellee Don King Productions, Inc.

Before: WINTER, Chief Judge, FEINBERG and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This interlocutory criminal appeal, pursuant to 18 U.S.C. § 3731, primarily concerns a Confrontation Clause issue arising in the context of a closely held corporation. The specific issue is whether the Confrontation Clause bars the Government from offering in evidence against a corporation testimony of the corporation's president and sole shareholder, given at a prior criminal trial at which the corporate officer, but not his corporation, was a defendant. The United States brings this pretrial appeal from the October 22, 1997, order of the District Court for the Southern District of New York (Lawrence McKenna, Judge), excluding the trial testimony of boxing promoter Don King from a forthcoming trial at which both King and his corporation, Don King Productions, Inc. ("DKP"), will be defendants. We conclude that the Confrontation Clause is inapplicable in this case, and therefore reverse and remand.

### Background

King was the sole defendant on an indictment charging him with wire fraud offenses arising out of an alleged scheme to defraud an insurance company. After the jury deadlocked in that trial, a mistrial was declared. The Government then sought and obtained a new indictment charging both King and DKP with the wire fraud offenses. Inclusion of DKP in the new indictment was initially precluded by the District Court on the ground of prosecutorial vindictiveness. *See United States v. King*, No. 94 Cr. 455, 1997 WL 527867 (S.D.N.Y. Aug. 22, 1997). On the Government's prior interlocutory appeal, we reversed. *See United States v. King*, 126 F.3d 394 (2d Cir.1997).

Upon remand, the District Court considered previously filed motions by the defendants to bar use of King's testimony from the first trial in the Government's direct case at the second trial. Judge McKenna granted the defendants' motions in a thoughtful opinion. *See United States v. King*, No. 94 Cr. 455, 1997 WL 666778 (S.D.N.Y. Oct. 24, 1997). Considering first the admissibility of King's testimony against DKP, he ruled that the testimony appeared to come within Rule 801(d)(2)(D) of the Federal Rules of Evidence, which specifies that a statement is not hearsay if it is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." However, he further ruled that the Confrontation Clause applied to King's testimony from the first trial since DKP had not been a defendant at that trial and therefore had lacked an opportunity to cross-examine King. Finally, he concluded that the Confrontation Clause precluded King's testimony from use against DKP because section 801(d)(2)(D), in its current form,[1] is not "a firmly rooted hearsay exception,"[2] *Ohio v. Roberts*, 448 U.S. 56, 66,

---

1. Section 801(d)(2)(D) broadens the prior definition of admissible statements of agents from statements "made by the agent acting in the scope of his employment" to statements "related to a matter within the scope of the agency or employment." Fed.R.Evid. 801(d)(2)(D) advisory committee note. We need not decide whether this broadening renders the current version not "firmly rooted," *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), as a hearsay exception, for purposes of the Confrontation Clause.

2. Judge McKenna recognized, correctly in our view, that though Rule 801(d)(2)(D) categorizes statements within its terms as "not hearsay," the Supreme Court has applied the traditional hearsay definition, *see Lee v. Illinois*, 476 U.S. 530, 543 n. 4, 106 S.Ct. 2056, 2064 n. 4, 90 L.Ed.2d 514 (1986), in determining whether a hearsay "exception" is "firmly rooted" for purposes of the Confrontation Clause. *See Bourjaily v. United States*, 483 U.S. 171, 181–84, 107 S.Ct. 2775, 2781–83, 97 L.Ed.2d 144 (1987) (statement excluded from hearsay definition by section 801(d)(2)(E)).

100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), nor was the testimony given under circumstances establishing "particularized guarantees of trustworthiness," *id.* (footnote omitted).

With respect to the admissibility of King's first trial testimony against King himself, Judge McKenna first ruled that the testimony would be admissible against King under Rule 801(d)(2)(A) (party's own statement not hearsay) if he were tried alone. However, he further ruled, admission of King's testimony at a joint trial of King and DKP would encounter problems under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), at least to the extent that the testimony was exculpatory of King, inculpatory of DKP, and not susceptible to redaction. Since the Government was proposing to offer the entirety of King's prior testimony, Judge McKenna understandably felt unable to assess all *Bruton* issues that might arise at the second trial and therefore outlined a procedure for identifying specific *Bruton* issues. However, he ruled that one portion of King's testimony—the four answers that appeared to shift responsibility to DKP[3]—would be excluded under *Bruton.*

### Discussion

1. Admission of King's Testimony Against DKP

█ The principal question concerning the admission of King's testimony against DKP is whether the Confrontation Clause applies to protect a corporation, wholly owned by one individual, from admission of statements of the corporation's sole shareholder, made at that individual's prior trial. No prior decision appears to have considered this precise issue.

Somewhat relevant, and helpful to the Government, is Judge Friendly's observation in *United States v. Southland Corp.,* 760 F.2d 1366, 1377 (2d Cir.1985), that a Confrontation Clause objection to admission of notes prepared by a corporation's general counsel "seems hardly appropriate when voiced by [the corporation], since the witness it wishes to confront is, in the eyes of the law, itself." This observation does not settle the matter, however, for three reasons. First, the remark is dictum since the notes were not being used to prove a fact stated in them, and the Court ultimately assumed, for the argument, that the Confrontation Clause applied. Second, the Court relied on *United States v. Dotterweich,* 320 U.S. 277, 281, 64 S.Ct. 134, 137, 88 L.Ed. 48 (1943), which had said only that "from the point of view of action the individuals are the corporation." The fact that an agent's actions may be binding upon his corporate employer does not necessarily mean that the corporation has no Confrontation Clause objection to the agent's testimony given at a prior trial. Third, the agent in *Southland* prepared the notes in the course of his duties as general counsel, whereas King's testimony was given in the course of his defense at his trial on criminal charges.

█ Nevertheless, we conclude that a Confrontation Clause objection is not available where a corporation, owned entirely by one individual, seeks to preclude the use against it of that individual's testimony from a prior trial. For purposes of the Confrontation Clause, the corporation is the alter ego of its sole shareholder and has no valid complaint that it lacked the opportunity to conduct its own cross-examination of the witness with respect to testimony that was subject to explanation or clarification by the shareholder-witness upon questioning by his counsel at the first trial.[4] We fully appreciate that state law recognizes the separateness of a wholly owned corporation from its sole shareholder for purposes of insulating the shareholder from liability for the corporation's debts, at least in the absence of circumstances warranting piercing the corporate veil. But the state law principle that insulates the shareholder from the debts of his corporation does not warrant insulating the

---

3. These answers are summarized in our prior opinion. *See King,* 126 F.3d at 399 n. 1.

4. The four answers most particularly at issue on this appeal were elicited by the Government on cross-examination, but King's counsel was not denied the opportunity to examine with respect to these answers on redirect examination.

corporation under the Confrontation Clause from the evidentiary use against it of the shareholder's statements, at least those given under oath in a proceeding in which the shareholder is represented by counsel. Corporate separateness need not be recognized for all purposes. *See Bangor Punta Operations, Inc. v. Bangor & Aroostook R. Co.,* 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (1974).

Judge McKenna advanced two reasons for according DKP the protection of the Confrontation Clause. First, he pointed out that corporations enjoy constitutional rights. *See King,* 1997 WL 666778, at *3 (citing *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (double jeopardy protection), and *United States v. Twentieth Century Fox Film Corp.,* 882 F.2d 656 (2d Cir.1989) (jury trial)). Second, he expressed concern that denying DKP Confrontation Clause protection would "counter the public goal of reliability underlying" the Clause. *See id.* We do not think either reason resolves the pending issue. The fact that corporations enjoy some constitutional rights does not necessarily mean that they enjoy a Confrontation Clause right against the prior trial testimony of a sole shareholder. As to reliability, we recognize that a sole shareholder, testifying in his defense at his own criminal trial, might unreliably seek to shift blame from himself to his corporation in an effort to avoid the risk of imprisonment. But we do not believe the Confrontation Clause is properly understood to guard against that sort of unreliability. The Clause should not be construed to aid the sole owner of a corporation to adjust his testimony in the hope of shifting blame from himself to his wholly owned company. If he unreliably endeavors to shift such blame, the corporation that he wholly controls has no valid complaint.

■ The same considerations that render the Confrontation Clause inapplicable also refute DKP's contention that King's testimony is not admissible against his corporation under Rule 801(d)(2)(D). DKP argues that though King is certainly an agent of DKP, his testimony is not admissible under Rule 801(d)(2)(D) because the interests of King and his corporation were in conflict to the extent that King is to be understood as trying to exonerate himself at the expense of DKP. *See Securities and Exchange Commission v. Geon Industries, Inc.,* 531 F.2d 39, 43 n. 3 (2d Cir.1976) (exclusion of agent's statement upheld in light of "conflicting litigating positions" between employee-agent and employer); *see also Brink's Inc. v. City of New York,* 717 F.2d 700, 719 n. 3 (2d Cir.1983) (Winter, J., dissenting).

The adversity recognized in *Geon Industries* cannot be invoked by an entity that is the alter ego of the declarant. Just as DKP cannot validly complain that it lacked an opportunity to cross-examine itself, it similarly cannot complain that its sole shareholder, speaking in his individual capacity, might have unreliably sought to shift blame to himself in his corporate capacity. The construction of Rule 801(d)(2)(D) that protects a fully distinct entity from having attributed to it the statements of its agent under circumstances of "conflicting litigation positions," has no application to alter egos. To whatever extent King sought to shift blame to his wholly owned corporation, neither he nor his corporation can expect the rules of evidence to protect them from that tactical decision, whether the blame-shifting statement was truthful or not. King's testimony is admissible against DKP under Rule 801(d)(2)(D).

The only remaining issue concerning the admissibility of King's testimony against DKP is the possibility of exclusion under Rule 403. Judge McKenna indicated that, at least to the extent that the Government was offering against DKP portions of King's testimony as declarations against penal interest, *see* Fed.R.Evid. 804(b)(3), the portions would be inadmissible because the "probative value is substantially outweighed by the danger of misleading the jury." *See King,* 1997 WL 666778, at *10 (citing Fed.R.Evid. 403). To the extent that this aspect of his ruling was related to statements offered only under Rule 804(b)(3), it appears to have no bearing on testimony that we have ruled is admissible under Rule 801(d)(2)(D), in the absence of a Confrontation Clause objection. To whatever extent the Rule 403 ruling was intended to apply more broadly, it should be reconsid-

ered on remand, now that the Confrontation Clause objection has been removed. Since DKP, as King's alter ego, cannot validly complain that it lacked an opportunity to cross-examine itself, it similarly has little, if any, basis for complaint that testimony, admissible against King, would be excludable against the corporation by virtue of Rule 403. Moreover, Judge McKenna explicitly supported his Rule 403 ruling with considerations that are inapplicable to DKP, once it is regarded as the alter ego of King. For example, he relied in part on DKP's lack of personal knowledge of King's statements, but an alter ego cannot validly make that complaint. How Rule 403 would apply in the precise circumstances of the second trial, however, is a matter for the District Judge to consider on remand, perhaps most appropriately as such issues arise in the course of the trial.

2. Admission of King's Testimony against King

 Though Judge McKenna ruled that King's testimony would be admissible against King, he concluded that its admission *at the forthcoming joint trial* would encounter *Bruton* objections, the precise resolution of which would depend on which portions of the prior testimony the Government offered. However, with respect to the four answers that appeared to shift responsibility to DKP, he ruled that *Bruton* would bar their use against the corporation.

For substantially the same reasons that King's testimony encounters no valid Confrontation Clause objection when offered against his corporation, it also encounters no valid *Bruton* objection. King and his wholly owned corporation are alter egos for both purposes. *Bruton* serves to protect a defendant from prior accusations by a currently tried co-defendant that the defendant had no opportunity to cross-examine. The rationale of that protection is inapplicable where the co-defendant is accusing itself, albeit in its corporate, rather than its individual, capacity.

### Conclusion

The order of the District Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.