**UNITED STATES of America**

v.

**Anthony SAINATO and Vincent Sainato, Defendants.**

**No. CR–98–397 ADS.**

United States District Court,
E.D. New York.

May 21, 1999.

United States Department of Justice, Washington, D.C., for the Government, by David P. Bloch, Senior Trial Attorney, Tax Division.

Jacob R. Evseroff, P.C., Brooklyn, NY, for defendant Anthony Sainato.

Dale L. Smith, Brooklyn, NY, for defendant Vincent Sainato.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Presently before the Court are the motions of Vincent Sainato and Anthony Sainato (collectively, the "defendants") for an order dismissing the indictment on the ground that the prosecution against them is vindictive and thus violates the United States Constitution's Fifth Amendment Due Process Clause.

### I. BACKGROUND

On January 29, 1998, the Government filed an indictment (CR 98–96) ("indictment number one") charging the defendants with one count of conspiracy to defraud the Internal Revenue Service ("IRS") in violation of 18 U.S.C. § 371. The alleged conspiracy involved a scheme by employees of Royce Aerospace Corporation ("Royce"), and others to defraud the IRS by taking improper business deductions and filing false tax returns.

The defendants assert that the Government threatened to file an indictment against the defendants' mother, and Anthony Sainato's son if they refused to plead guilty. The defendants claim that the unnamed Assistant United States Attorney stated "Tell him his son will be sitting at

the table next to him." In addition, the defendants contend that the Government threatened to continue with an IRS criminal investigation and to file additional charges against them if they did not plead guilty.

On April 16, 1998, the Government filed a second single count indictment (CR 98–397) ("Indictment number 2"), charging both defendants with conspiracy to defraud the IRS. This charge, wholly unrelated to Indictment number one, alleges that the defendants engaged in a conspiracy between September 1989 and October 1996 involving the receipt of income checks from customers of companies operated by them, the transfer of income between numerous accounts, and the later withdrawal of income via checks payable to a fictitious persons.

According to the defendants, the Government stated that if the defendants plead guilty to Indictment number one, they would dismiss Indictment number two. This offer was rejected by the defendants and Indictment number one proceeded to trial. On November 18, 1998, after the Government's case-in-chief, the Court granted Vincent Sainato's Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. The following day, November 19, 1998, the jury acquitted Anthony Sainato. The Court set a March 1, 1999 trial date for Indictment number two. On March 4, 1999, the Government filed a superseding indictment to CR 98–397, the latest and present indictment ("Indictment number three"), which is currently pending before this Court.

Indictment number three expanded indictment number two, adding additional tax fraud charges including the filing of a false corporate tax return, aiding and assisting in the filing of a false corporate tax return, tax evasion, and obstruction of justice. All of the new charges in Indictment number three were against Anthony Sainato. In addition, Indictment number three expanded on the content of the original conspiracy charge. As a result of these additions, the potential penalties are more severe.

The defendants assert that the Government has concluded, without any valid basis, that the defendants are members of the "Mafia." The basis for this accusation is the grand jury testimony of Kent Vechio in connection with Indictment number one. This grand jury testimony included the following:

Q: In other words, Jimmy was cashing the checks not on behalf of Tony Sainato, but on his own little operation?

A: Yes.

Q: By the way, did Tony get a vig from cashing the checks from Royce?

A: I heard 10 percent

(Tr. 26). According to the defendants, "vig" is a code word often used to refer to fees paid to the Mafia. The defendants also point to other testimony by Vechio in the grand jury in support of their contention that the Government has concluded that the defendants are members of the "Mafia."

Q: Did Tony ever offer to pay for your lawyer?

A: Never.

\* \* \* \* \* \*

Q: Did Tony Sainato ever threaten you to keep you continuing to do business with him?

A: No. Nothing ever was like a threat, but it was just the environment was like not the most healthy.

\* \* \* \* \* \*

Q: Are you aware if Tony is connected to the mafia or a family?

A: He, himself?

Q: Yes.

A: Not to my knowledge

(Tr. 26, 28, 32–34).

In addition, the defendants charge that the Government met with a potential witness, Wayne Schwartz, a certified public

accountant, who prepared some of the tax returns of the companies listed in Indictment number three, and was told by the Government that the defendants are connected to the Mafia. In sum, the defendants argue that "the government's focus and preoccupation with the Mafia during Vechio's examination and Schwartz's interviews in this 'IRS prosecution' reveals its vindictive motive behind the decision to further prosecute the defendants."

## II. DISCUSSION

In *United States v. Johnson,* 171 F.3d 139 (2d Cir.1999), the Second Circuit recently set forth the applicable standard in a motion to dismiss an indictment for vindictive prosecution. In *Johnson,* the Second Circuit reversed the District Judge's dismissal of a three-count indictment of the defendant charging him with various weapons violations. The District Court's dismissal was based "upon a sequence of events which the Government did not initiate the weapons prosecution—despite the presumptive availability of the underlying evidence and an ongoing state prosecution based on the same facts—until after defendant had exercised his right to a jury trial and had been acquitted on separate RICO charges." *Id.* at 140.

In reversing the District Court and reinstating the indictment, the Second Circuit stated that, "[a]n indictment will be dismissed if there is a finding of actual vindictiveness, or if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action." *Id.* (quoting *United States v. King,* 126 F.3d 394, 397 [2d Cir. 1997]). The Court went on to add that "a finding of actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in a rare case.'" *Johnson,* 171 F.3d at 141–42 (quoting *United States v. Goodwin,* 457 U.S. 368, 380–81 & nn. 12–13, 384 & n. 19 [1982]; *King,* 126 F.3d at 397). In order for the defendants to demonstrate a presumption of vindictive-

ness, "the circumstances of the case [must] create a 'realistic likelihood' of prosecutorial vindictiveness." *Johnson,* 171 F.3d at 141 (quoting *King,* 126 F.3d at 397).

Holding, significantly, that the defendant had not met even the "presumption of vindictiveness" threshold, the Court held that "we join the other courts of appeals that have held that a new federal prosecution following acquittal on separate federal charges does not, without more, give rise to a presumption of vindictiveness." *Johnson,* 171 F.3d at 141.

In this case, the Court is not persuaded that the defendants have either demonstrated direct evidence of actual vindictiveness or enough evidence to create a presumption of vindictiveness. Clearly, there is no direct evidence that supports a finding of actual vindictiveness or genuine animus on the part of the Government. Even if the facts alleged by the defendants are presumed to be true, they have not adequately demonstrated that the Government is vindictively seeking prosecution in Indictment number three.

■ The crux of the defendants' argument appears to be their belief that the "government's constant reference to defendants being Italian–American and unfounded suspicions of a connection to the Mafia is direct evidence of the government's vindictive motive." The Court finds this argument unpersuasive. Even if the Government believed that the defendants are involved in organized crime, this belief itself would not support the defendants contention that they are prosecuting this case as a result of religious or national-origin animus. To the contrary, it appears that the principal reason the Government is prosecuting this case, is not because the defendants are Italian–Americans, but because they believe they have committed tax fraud, have obstructed justice, and are involved in organized crime.

■ In addition, the claim that the Government is prosecuting this case because of the acquittal on Indictment num-

ber one, is undermined by the fact that the defendants had already been indicted on Indictment number two prior to their acquittal. The Court notes that in *Johnson*, the defendant was indicted on a new charge *after* he had been acquitted and the Second Circuit stated that "a new federal prosecution following an acquittal on separate federal charges does not, without more, give rise to a presumption of vindictiveness." *Johnson*, 171 F.3d at 141 (citations omitted). Moreover, in *Paradise v. CCI Warden*, 136 F.3d 331, 336 (2d Cir.), *cert. denied*, — U.S. —, 119 S.Ct. 94, 142 L.Ed.2d 74 (1998), the Second Circuit rejected the defendant's argument that the initial choice to withhold certain charges amounts to a constitutional violation. Specifically, the Court in *Paradise* stated that, "[a]ccepting [the defendant's] contention would encourage prosecutors to overcharge defendants, by charging both a greater number of crimes and the most severe crimes supported by the evidence. This is a result we do not wish to promote. Instead, the validity of a pretrial charging decision must be measured against the broad discretion held by the prosecutor to select the charges against the accused." *Id.* (internal quotations and citations omitted). Here, the Court notes that not only was there a separate indictment prior to the defendants' acquittal on indictment number one, but, apparently, new evidence has surfaced since indictment number two that has warranted the Government's seeking of additional charges.

 Finally, the defendants' assertion that the Government's *current prosecution* is somehow tainted because of their "threats" in conjunction with the rejected plea-bargains, is undermined by the well-established and constitutional prerogative of the Government to bring otherwise legitimate charges to induce a defendant to accept a plea bargain, and "present[ing] the defendant with the unpleasant alternative[ ] of foregoing trial or facing charges on which he is plainly subject to prosecution." *United States v. Stanley*, 928 F.2d 575, 579 (2d Cir.), *cert. denied*, 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991), (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S.Ct. 663, 54 L.Ed.2d 604 *reh. denied*, 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 [1978] ). Such "threats," even against family members, which are fairly commonplace in plea negotiations, do not support the defendants vindictiveness claim.

The defendants have failed to provide any direct evidence of actual vindictiveness. In addition, the facts set forth in the defendants' motion papers and at oral argument do not create a "realistic likelihood" of prosecutorial vindictiveness. Even if the defendants had attached an affidavit of Wayne Schwartz, the Court would find that the defendants have demonstrated neither actual vindictiveness nor a presumption of vindictiveness. Nor is a hearing necessary in this regard. Accordingly, the Court denies the defendants' request to dismiss the indictment.

## III. CONCLUSION

Having reviewed the parties' submissions and afforded them the opportunity to fully present oral argument, and for the reasons set forth above, it is hereby

**ORDERED**, that the defendants' motion to dismiss the indictment on the ground of prosecutorial vindictiveness is **DENIED**; and it is further

**ORDERED**, that the parties are directed to appear for jury selection on January 3, 2000 at 9:00 AM before the United States Magistrate Judge.

**SO ORDERED.**