Chiu Chung Chan *vs.* Su Ru Chen.

No. 06-P-1074.

Middlesex. March 5, 2007. - September 6, 2007.

Present: Gelinas, Cowin, & Graham, JJ.

*Evidence,* Vicarious admission. *Contract,* Performance and breach. *Real Property,* Purchase and sale agreement. *Fraud.*

In a civil action alleging fraud and misrepresentation in the sale of a business, the judge erred in allowing in evidence, as vicarious admissions of the seller, out-of-court statements made by the seller's broker and the broker's daughter (who worked for the broker) regarding the volume and profitability of the business, where the declarants were not authorized to act on the matters about which they spoke, in that they were engaged in a conflict of interest in the matter, i.e., they were trying to secure the business for the daughter and her fiancé at a reduced price. [82-86]

Civil action commenced in the Superior Court Department on February 4, 2003.

The case was tried before *Frank M. Gaziano,* J., and posttrial motions were heard by him.

*John P. Connell* for the defendant.

*James M. Caramanica* for the plaintiff.

Gelinas, J. The defendant, Su Ru Chen (seller), appeals, arguing that the trial judge erred in allowing in evidence out-of-court statements made by two witnesses, Bob Sun (Sun) and Frances Sun (Frances), to the plaintiff, Chiu Chung Chan (buyer), as "vicarious admissions" of the seller; that the judge incorrectly denied the seller's posttrial motion to vacate due to fraud; and that the judge committed error in denying the seller's posttrial motion for judgment notwithstanding the verdict or, in the alternative, for new trial.

In October, 2001, the seller owned and operated the Lucky Duck Fortune Cookie Factory in Everett, a business that made

Chinese-style fortune cookies for restaurants. The seller approached Sun, a licensed real estate broker, regarding the sale of the business, and listed it for sale with him for $35,000, with Sun to receive a six percent commission on the sale.[1] Although the seller's husband, Zhao Chen, did not own an interest in the business, the seller authorized him to speak on her behalf and to communicate with Sun in trying to sell the business.

In November, 2002, approximately one year later, Sun's daughter, Frances, informed her fiancé, the buyer, of the opportunity to purchase the business. Frances, a computer consultant, was working part-time for Sun as an "associate broker." The buyer and Frances decided to purchase the business together. Frances, who planned to work at the business, did most of the investigation into its finances, and sought to help the buyer purchase the business for the best price. Acting ostensibly as a broker on behalf of the seller, Frances began to inquire of the seller by telephone as to the finances of the business, without revealing either that she was the fiancée of the buyer or that she would have an interest in the business once purchased.[2]

Frances testified that, during a telephone conference call with the seller, who was at home, and the seller's husband, who was at the factory, she, Frances, inquired as to how much profit the business had and how many boxes of fortune cookies it sold each month. Frances testified that both the seller and her husband answered that the business made $2,000 per month in profit, that it had eight or nine customers, and that it sold between 1,000 and 1,200 boxes of cookies every month. Frances also obtained the most recent income tax returns of the seller and her husband (for years 1999, 2000, and 2001), including Schedules C detailing income and expenses of the business. The tax returns corroborated what Frances and the buyer had been told about the business. Frances also drove with the seller's husband on one or two occasions while he made cookie deliveries in November, 2002, to determine if the delivery truck was operational. While in the

---

[1]Although Sun claimed to have a written listing agreement, no such listing was produced at trial. According to Sun, the listing agreement ran from November, 2001, through November, 2002.

[2]Frances testified that she did not meet the seller until the closing.

delivery truck, Frances reviewed sales invoices, but was not allowed to make copies of them.[3]

The sale closed on December 4, 2002. At the closing, Sun produced both an offer to purchase and a purchase and sale agreement, which both the buyer and seller signed. The existing commercial lease for the cookie factory was assigned from the seller to the buyer with the lessor's permission. Although the original asking price for the business was $35,000, Sun and Frances had negotiated the price down to $23,000. Sun deducted ten percent of the purchase price ($2,300), and paid the seller the balance ($20,700) as her proceeds from the sale.

The buyer and Frances began to operate the business immediately following the closing. Frances testified that, by December 6, 2002, only two days later, she determined that the immediate demand for the business's cookies was about "500 boxes" per month, rather than the 1,000 to 1,200 she claimed the seller had represented to her.[4] Frances also determined that, based upon a monthly demand for 500 boxes, the business would not make any profit and would probably lose money. On the same date, December 6, 2002, the buyer and Frances made the decision to cease operating the business. In mid-December, the buyer left for a previously planned vacation to China. By the end of December, 2002, no more cookies were being made, and all existing cookies were sold by the third week of January, 2003, at which time the business ceased to operate.

On February 4, 2003, the buyer commenced the present action in Superior Court against the seller alleging breach of contract, fraud and misrepresentation, and violation of G. L. c. 93A.[5] Prior to trial, the judge conducted a lengthy evidentiary hearing on the issue whether statements made by the seller's agents (Sun and,

---

[3]The seller denied that she or her husband ever provided financial information apart from the tax returns. Apart from Frances's testimony as to what the seller said, there was no evidence of any specific financial information conveyed to the buyer from the seller, other than the tax returns.

[4]Frances testified at trial that the actual number of boxes sold during December, 2002, was 556, which corresponded to the total number on the profit and loss statement for that month, exclusive of 103 more boxes sold at the Kam Lung bakery (for an absolute total of 659).

[5]A stipulation of dismissal was entered below on the buyer's claim for declaratory relief against the lessor of the factory space, and the lessor's counterclaims against the buyer.

purportedly, Frances) to the buyer would be allowed in evidence as vicarious admissions. The judge ruled from the bench that the buyer had established that Sun and Frances "were authorized to act as brokers for the sale of the business . . . [and] to provide information to potential buyers concerning the value of the business . . . [and that] the [probative] value of this evidence is not substantially outweighed by its prejudicial effect," even though the judge was "concerned with the dual role that was played by Frances Sun in this transaction." In answer to special questions, the jury found that the seller did not breach either the parties' written purchase and sale agreement or any oral agreement between the parties. However, the jury also found that the seller committed an act of "fraud/misrepresentation" against the buyer, and they awarded the buyer $17,000 in damages. On the buyer's G. L. c. 93A claim, which the judge reserved to himself, the judge found that the buyer had not sustained his burden of proof. The judge denied the seller's timely motions to vacate the judgment due to fraud,[6] and for judgment notwithstanding the verdict or for new trial. The seller appeals.

It was undisputed at trial that neither the seller nor the seller's husband ever met with the buyer or said anything to the buyer prior to the closing. Even at the closing, the seller and her husband said nothing of consequence to the buyer and engaged only in polite small talk. The buyer did not contend at trial that anything contained in the seller's income tax returns, which were relied on by the buyer, was false.

To prevail on a claim for fraud or deceit, a plaintiff must prove as an essential element of the claim that the defendant has knowingly made a false statement of material fact, intending that the plaintiff rely thereon, and upon which the plaintiff did rely. See *Reisman* v. *KPMG Peat Marwick LLP*, 57 Mass. App. Ct. 100, 108-109 (2003); *Equipment & Sys. for Indus., Inc.* v. *Northmeadows Constr. Co.*, 59 Mass. App. Ct. 931, 931 (2003). Here, the sole support for this element of the claim is the out-of-court statements made by Frances or Sun to the buyer

---

[6]In support of this motion, the seller produced evidence establishing that Frances was never a licensed real estate broker and that, at the time of the parties' dealings, Frances's license as a real estate salesperson had expired more than two years earlier.

as to what the seller or her husband had said to them regarding the volume and profitability of the business.

"[A] vicarious admission describes an exception to the hearsay rule; namely, a witness may testify to the out-of-court statement of an agent of a party." *Thorell* v. *ADAP, Inc.*, 58 Mass. App. Ct. 334, 339 (2003), quoting from *Turners Falls Ltd. Partnership* v. *Board of Assessors of Montague*, 54 Mass. App. Ct. 732, 736 (2002). In conducting his hearing on the admissibility of the statements, the trial judge properly followed the procedure and standards established for making determinations as to the admissibility of vicarious admissions. See *Ruszcyk* v. *Secretary of Pub. Safety*, 401 Mass. 418, 421-424 (1988) (modifying common-law rule with respect to vicarious admissions); *Thorell* v. *ADAP, Inc.*, 58 Mass. App. Ct. at 338-340. In *Thorell*, this court described the two-prong test used to determine whether out-of-court statements made by alleged agents or employees of a principal should be considered vicarious admissions and therefore an exception to the hearsay rule. To determine whether a statement qualifies as a vicarious admission, the judge first must decide as a preliminary question of fact whether the declarant was authorized to act on the matters about which he spoke. *Id.* at 339. If the judge finds that the declarant was so authorized, the judge must then decide whether the probative value of the statement substantially outweighs its potential for unfair prejudice. *Ibid.* "In so doing, the judge should consider 'the credibility of the witness; the proponent's need for the evidence, e.g., whether the declarant is available to testify; and the reliability of the evidence offered, including consideration of whether the statement was made on firsthand knowledge and of any other circumstances bearing on the credibility of the declarant.' " *Id.* at 339-340, quoting from *Ruszcyk* v. *Secretary of Pub. Safety, supra* at 422-423. Following a hearing on the admissibility of the statements, the trial judge ruled, in part, as follows:

> "To determine whether the statements qualify by vicarious admission, the Court must find two things. First, whether the declar[ants] in this case, Bob Sun and Frances Sun, were authorized to the matter to which they spoke; second, if so, whether the [probative] value of the statements [is] substantially outweighed by its potential for unfair

prejudice. . . . Based upon the credible testimony before me, I find that the plaintiff has established that Bob Sun and Frances Sun were authorized to act as brokers for the sale of the business. . . . I further find [that] the [probative] value of this evidence is not substantially outweighed by its prejudicial effect. I am however concerned with the dual role that was played by Frances Sun in this transaction. She acted as an agent for the Seller and as an employee for her father's agency, but she also acted in her own self interest to further the interest of her future husband. There is no doubt that the defendant could reasonably expect that all the information Frances Sun obtained through the ride-alongs during deliveries and the like would be passed along to potential buyers. It is disturbing that she played a dual role assisting her future husband, that I find that the defendant is prejudiced by the fact that both h[er] agents are now father-in-law and wife of the plaintiff. However, this prejudice isn't sufficient to outweigh the [probative] value."

As with other rulings on evidence, the admission of vicarious admissions is largely committed to the sound discretion of the trial judge. See *Canavan's Case*, 432 Mass. 304, 317 (2000) (Greaney, J., concurring) ("most evidentiary rulings by trial judges are governed by the abuse of discretion-error of law standard"); *Henderson* v. *D'Annolfo*, 15 Mass. App. Ct. 413, 429 (1983). We will not disturb such a ruling absent an abuse of discretion, which subsumes the question whether there was an error of law. See *Canavan's Case, supra* (Greaney, J., concurring) (words "abuse of discretion" also "encompass an error of law"). "In assessing whether a judge has abused his discretion, 'we do not simply substitute our judgment for that of the judge, rather, we ask whether the decision in question rest[s] on whimsy, caprice, or arbitrary or idiosyncratic notions.' " *Massachusetts Assn. of Minority Law Enforcement Officers* v. *Abban*, 434 Mass. 256, 266 (2001), quoting from *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 811 (1999). See *Davis* v. *Boston Elev. Ry.*, 235 Mass. 482, 502 (1920) (abuse of discretion defined as view or action "that no conscientious judge, acting intelligently, could honestly have taken").

Although the issue is close, given the requirement that the trial judge "consider 'the credibility of the witness; the proponent's

need for the evidence, e.g., whether the declarant is available to testify; and the reliability of the evidence offered, including consideration of whether the statement was made on firsthand knowledge and of any other circumstances bearing on the credibility of the declarant,' " *Thorell* v. *ADAP, Inc.*, 58 Mass. App. Ct. at 339-340, quoting from *Ruszcyk* v. *Secretary of Pub. Safety*, 401 Mass. at 422-423, we think that application of this standard to the facts of this case would lead us to conclude that the judge did not abuse his discretion in determining that the probative value of the evidence outweighed the prejudice to the seller; however much we might differ if called upon to decide the issue in the initial instance, we would defer to the judge's discretion on the facts before us here. We conclude, however, that the judge committed error of law, and thus an abuse of discretion, when he determined that Sun and Frances were agents of the seller, authorized to make the statements the buyer sought to admit in evidence as vicarious admissions.

Prescinding from the question whether Sun and Frances were in violation of the professional standards of practice for real estate agents, especially 254 Code Mass. Regs. § 3.00(11)(a) and (14)(b) (1998), and whether such violations would void any agency relationship with the seller, we note that the judge found as fact that both Sun and Frances were engaged in a conflict of interest in this matter. This conflict placed them in a role directly adverse to the seller's interest, if for no reason other than their interest in securing the business for Frances and her fiancé at a reduced price, which they eventually did. "Unless otherwise agreed, an agent is subject to a duty not to deal with his principal as an adverse party in a transaction connected with his agency without the principal's knowledge." Restatement (Second) of Agency § 389 (1958). Violation of an agent's duty against surreptitious self-dealing, regardless of whether the agent intends to harm the principal, is a breach of the agency relationship. See *id.* at comment a, which provides, in relevant part: "The agent's failure to reveal that he has an interest in the transaction is sometimes spoken of as fraudulent. If the agent intends to take advantage of the principal, the epithet, with its implication of immorality, is justified. But, irrespective of the words used to characterize the agent's conduct, such a transaction can be

rescinded by the principal although the agent acts in good faith and without consciousness of wrong doing." It is well established in Massachusetts that actions of agents who act for their own benefit will not be treated as binding on the principal. See *GTE Prod. Corp.* v. *Broadway Elec. Supply Co.*, 42 Mass. App. Ct. 293, 298-300 (1997); *Lawrence Sav. Bank* v. *Levenson*, 59 Mass. App. Ct. 699, 704-705 (2003). Again, as they were engaged in a conflict of interest, Sun and Frances could not be found to be authorized to act on matters about which they spoke.

Other jurisdictions are in accord, and do not allow an agent's out-of-court statements, made under similar conditions, to be imputed to the principal. See *Securities & Exch. Commn.* v. *Geon Indus., Inc.*, 531 F.2d 39, 43 n.3 (2d Cir. 1976) (holding that employee's testimony, given after he had been suspended from employment, was not admissible against employer because it was evident at time statement was made that parties could have conflicting interests); *United States* v. *Summers*, 598 F.2d 450, 458-459 (5th Cir. 1979) (holding statements made by agent after agent began cooperating with Federal Bureau of Investigation were inadmissible against principal, while statements made beforehand were admissible); *United States* v. *King*, 134 F.3d 1173, 1176 (2d Cir.), cert. denied, 525 U.S. 819 (1998) (recognizing that Fed.R.Evid. 801[d][2][D] does not allow agent's statements to be imputed to principal if parties have conflicting litigation positions).

As previously noted, absent the vicarious admissions, there was no evidence upon which a jury might base their finding that the defendant had engaged in acts of fraud or misrepresentation. Accordingly, the judgment in favor of the buyer on that count is reversed, and judgment shall enter for the seller on that count. In all other respects, the judgment is affirmed.

*So ordered.*