Connolly, Thomas E., J.
The defendant, Andre M. By’s driving history in Massachusetts includes at least two convictions, or their equivalent for operating under the influence of alcohol. One was in Somerville in 1987 and another was in Winchester in 2004.
The Legislature created ch. 90, §24 1 /2 which established the requirement of an ignition interlock device (“IID”) to be installed in any motor vehicle owned or operated by a person convicted twice of operating under the influence of alcohol. The device (IID) measures the percentage, by weight, of alcohol in a person’s blood, as measured by a test of the person’s breath. An operator is required to have a start-up test, namely a breath test taken by the operator of an IID-equipped vehicle to measure the operator’s blood alcohol concentration (BAC), prior to starting the vehicle’s ignition. If the operator’s BAC is greater than .02, the vehicle will not start and the violation is recorded and reported to the Registry of Motor Vehicles. Also, there are random Rolling Re-tests which require the operator to undergo a breathing test while operating, and if the reading is greater than .02, it is recorded and reported as a violation to the RMV.
Ch. 90, §24 1/2 has a preamble which states that the act is intended to increase the penalties for drunk drivers in this Commonwealth and expresses the act’s overarching goal as the immediate preservation of public safety. The IID requirement, a precautionary measure to ensure that those prone to OUI offenses do not harm themselves or others, furthers this aim. Such a provision also comports with the Legislature’s intent to entrust the Registrar with the task of preserving public safety through license regulation. See: Michael Weitz v. Anne L. Collins, Registrar of Motor Vehicles, Plymouth Superior Court, CA No. 06-977B, March 22, 2007 [22 Mass. L. Rptr. 647).
Mr. By committed his two prior DUI convictions and was required to install an IID in his car in order to renew his driver’s license. The IID was installed on April 14, 2006 by his selected approved vendor, Smart Start. By would not have been given a driver’s license by the RMV unless he agreed to install an IID in his automobile and to abide by all the rules. By filled out all the necessary affidavits to obtain permission to install an IID including the two pages dated April 14, 2006 which set in detail the sanctions for violating the ignition interlock requirements. Said affidavit of April 14, 2006 was notarized by a notary public.
The records of the Smart Start Ignition Interlock Report that were submitted to the RMV are attached *526 to the Decision Relative to Ignition Interlock Device for the period from March 12, 2008 to March 29, 2008. The records substantially reflect no alcohol from Wednesday, March 12, 2008 until Thursday, March 27, 2008. Thereafter, the picture changes for Friday, March 28, 2008 and Saturday, March 29, 2008.
The way the IID would operate on a numbers basis is as follows:
(1) from 0.00 to 0.015 — no violation
(2) from above .015 to .02 — warning, but not a violation
(3) from greater than .02 — violation
On Friday, March 24, 2008, Mr. By had the following readings:
9:00:25 a.m. - Start-up - .016 - Warning
9:07:11 a.m. - Rolling Re-test - .022 - Failure
9:18:38 am. - Rolling Re-test - .019 - Warning
On Saturday, March 25, 2008, Mr. By had the following readings:
2:21:33 p.m. - Start-up - .014 - Pass
2:28:32 p.m. - Rolling Re-test - .020 - Warning
2:29:46 p.m. - Rolling Re-test - .047 - Failure
2:32:31 p.m. - Rolling Re-test - Skipped
2:44:18 p.m. - Calibration Check - .027 - Failure
Therefore, Mr. By had one failure on Friday, March 24, 2008 at 9:07:11 a.m. of .022 on a rolling re-test and had one failure on Saturday, March 25, 2008 at 2:29:46 p.m. of .047 on a rolling re-test. Therefore, on March 31, 2008, Smart Start forwarded a violation report to the RMV regarding possible IID violations by Mr. By.
A violation hearing was held at the RMV pursuant to 540 CMR 25.11. The hearing was originally set for May 9, 2008, and was continued at the request of Mr. By’s attorney to June 17, 2008. The burden of proof at said hearing is by a preponderance of the evidence.
As a result of said hearing, the Hearing Officer, Kevin Innes, found that Mr. By violated 540 CMR 25.10(f) namely Two Failed Rolling Re-tests within one service period, namely March 12, 2008 to March 29, 2008. The Hearing Officer also found that By, by his actions has endangered the public safety and forfeited the privilege of holding a Massachusetts license for ten years, pursuant to 540 CMR 25.11(b) and ch. 90, §24 1/2.
Ch. 90, §24 1 /2 appears to give the Registrar the discretion to set the sanctions on the penalty for an extended period or for life for all violations of ch. 90, §24 1/2. However, 540 CMR 25.11, which is captioned Sanctions, was amended effective November 2, 2007 and inter alia, added Section 3 which provides as follows:
(3) In the event of any two Ignition Violations based on Failed Rolling Re-tests, the revocation shall be for life.
Therefore, it appears that said amendment to 540 CMR 25.11(3) requires the Registrar to revoke By’s license for life for the two failed Rolling Re-tests. The Registrar retains the discretion to order the sanction of a revocation of license “for an expanded period or for life for all the other listed offenses,” but for the violations of the two failed Rolling Re-tests, the revocation for life is mandatory.
The standard for review in this case is “an abuse of discretion,” and not a ch. 30A, §14 review as urged by the plaintiff.
An abuse of discretion is defined “as a Hew or action that no conscientious judge [or here, the registrar] acting intelligently, could honestly have taken.” Davis v. Boston Elev. Co., 235 Mass. 482, 502 (1920). "In assessing whether a judge [or here, the registrar] has abused his discretion, we do not simply substitute our judgment for that judge [or here the registrar], rather we ask whether the decision in question rest(s) on whimsy, caprice or arbitrary or idiosyncratic notions.” Massachusetts Ass’n of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 266 (2001). “We will not disturb such a ruling absent an abuse of discretion which subsumes the question of whether there was an error of law.” Chan v. Chen, 70 Mass.App.Ct., 79, 84 (2007). See also Canavan’s Case, 432 Mass. 304, 317 (2000) (words “abuse of discretion” also encompasses an “error of law”).
The Court can see no abuse of discretion by the Registrar. The law was followed as set out in ch. 90, §24 1/2 and 540 CMR 25.01 to 540 CMR 25.14, with one exception, namely that Mr. By’s sanctions should extend for his lifetime and not for just 10 years.
Ch. 90, §24 1/2 is a very strict statute and it was meant to be a very strict statute when it was passed by the Legislature. However, it was also meant to give a driver who has been twice convicted of DUI a chance to continue driving, but under veiy strict observation and with strong, severe penalties for any violations. For a person who would comply with the rules, it gave him the ability to use his car for work, family or personal matters. For the person who would not comply with the strict requirement of ch. 90, §24 1/2 and its regulations, it means, such as in Mr. By’s case, never to be able to drive a motor vehicle again. If that’s what it takes to stop drunk drivers in Massachusetts from killing and maiming people, the Legislature has stepped up and passed this important statute and the RMV is requiring strict compliance with it.
This matter is before the Court on the Plaintiffs Request for the issuance of a Preliminary Injunction to prohibit the RMV from suspending Mr. By’s motor vehicle license or in the event that said license has been suspended to order the RMV to restore to Mr. By his driver’s license. In order to issue a preliminary *527 injunction, the Court generally must consider the plaintiffs chance of prevailing on the merits of the case and the risk of irreparable harm to the plaintiff and then to balance those two factors against the showing of risk of irreparable harm which would come from the issuance of a preliminary injunction to the defendant and the defendant’s chance of prevailing on the merits. “An injunction may issue properly only if the judge concludes that the risk of irreparable harm to the plaintiff, in light of his chances of success on his claim, outweigh the defendant’s probable harm and likelihood of prevailing on the merits of the claim.” Commonwealth v. Mass. CRINC, 392 Mass. 79, 87-88 (1984). However, when the Commonwealth, as here, is involved and the requested order concerns public interest or public safety, the judge would not consider any irreparable harm to the plaintiff. “The Attorney General is not required to demonstrate irreparable harm concerning those activities of the [plaintiff] which probably resulted in violations of our General Laws and which may adversely affect the public interest.” Commonwealth v. Mass. CRINC, 392 Mass. 79, 89-90 (1984).
The chance of the plaintiff prevailing in this case are negligible, if any at all. Therefore, the plaintiffs request for a preliminary injunction is and must be denied.[1]
ORDER
After hearing, the Plaintiffs Request/Motion for the issuance of a Preliminary Injunction is DENIED.

Insofar as the hearing officer made a straight-out error of law under the revised sanction provisions of 540 CMR 25.11 (3), effective on November 2, 2007, this Court is calling it to the attention of the RMV and its hearing officer to change the sanction for two failed rolling re-test violations to “suspended for life.”