**UNITED STATES of America,
Appellee–Cross–Appellant,**

**v.**

**Jeffrey A. JOHNSON, Appellant–
Cross–Appellee.**

**Docket Nos. 99–1274, 99–
1275 and 99–1354.**

United States Court of Appeals,
Second Circuit.

Argued: Jan. 14, 2000

Decided: Aug. 7, 2000

William P. Fanciullo, Albany, New York, for Appellant–Cross–Appellee.

Barbara D. Cottrell, Assistant United States Attorney (Thomas J. Maroney, United States Attorney, Northern District of New York; Thomas Spina, Jr., Assistant United States Attorney, of counsel), Albany, New York, for Appellee–Cross–Appellant.

Before: WINTER, Chief Judge, JACOBS, and KATZMANN, Circuit Judges.

WINTER, Chief Judge:

Jeffrey Johnson appeals from the 88–month sentence imposed by then-Chief Judge McAvoy following a guilty plea to numerous crimes of a sexual nature involving minors. Appellant argues that his sentence must be modified for a number of reasons, including prosecutorial vindictiveness that allegedly caused a substantial change in the government's position well into the sentencing proceedings. The government cross-appeals from certain aspects of the district court's grouping of the various counts to which appellant pleaded guilty.

We decline to entertain the cross-appeal. The arguments raised in the cross-appeal are at odds with the government's initial position with regard to the proper Guidelines range. They were raised only belatedly in the district court, without a showing of good cause, and then in the context of an erosion of the government's original and very different position. Given these and other matters described below, we believe that entertaining the cross-appeal might serve to deter defense counsel in similar circumstances from vigorously contesting the recommendations of a presentence report ("PSR") and, in the exercise of our supervisory power over the administration of justice, we decline to do so. However, we affirm the sentence. The district court independently questioned certain aspects of the original PSR and *sua sponte* requested a revised PSR from the Probation Department. The sentence imposed was based on that revised PSR and the district court's independent analysis of the proper enhancements and groupings contains no error harmful to appellant. We therefore affirm.

## BACKGROUND

a) *The Charges*

A three-count indictment was returned against appellant on June 25, 1997. On April 24, 1998, he entered into a plea agreement and waived indictment, and a

ten-count information was filed against him. Pursuant to the plea agreement, appellant pleaded guilty to counts one and three of the indictment and all counts of the information. Given the issues raised on this appeal, the various counts must be described in detail.

Count one of the indictment charged appellant with travel with the intent to engage in a sexual act with a minor, in violation of 18 U.S.C. § 2423(b). In the plea agreement, appellant admitted that, on or about June 17, 1997, he traveled from Massachusetts to New York to meet a thirteen-year-old girl for the purpose of engaging in oral sex with her.

Count three of the indictment charged appellant with knowingly transporting in interstate commerce a visual depiction of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(1). It charged that on June 17, 1997, appellant transported a graphic image on a laptop computer across state lines knowing that it depicted at least one individual under the age of eighteen engaged in sexually explicit conduct. Indeed, a search of appellant's hotel room on that day resulted in the seizure of, among other things, a number of graphic image files from his laptop computer, at least two of which contained child pornography.

Counts one, two, and three of the information charged appellant with violating 18 U.S.C. § 2422(b), enticement of a minor to engage in sexual activity. Count one charged that in June 1997, appellant came into internet contact with a minor female from Maryland, convinced her to travel to Virginia, and engaged in sexual acts with her that are illegal in Virginia. Similarly, count two charged that in March 1997 appellant contacted a sixteen-year-old girl from Maryland on the internet, traveled from Virginia to Maryland, and engaged in oral sex with her, in violation of Maryland law. Count three charged that in November 1996, appellant contacted a thirteen-year-old girl from Michigan on the internet and traveled from Virginia to Michigan for the purpose of engaging in sexual acts with her, in violation of Michigan law.

Count four charged appellant with violation of 18 U.S.C. § 2423(b). More specifically, in January 1996, appellant traveled from Virginia to Florida for the purpose of engaging in sexual acts with girls he believed to be twelve and thirteen years old.

Counts five, six, seven, and eight charge appellant with violations of 18 U.S.C. § 2252(a)(1). These counts allege that appellant transmitted computer images of minors engaging in sexually explicit conduct from Virginia to other states on September 23, 1996, September 8, 1996 (counts six and seven), and December 10, 1995, respectively.

Count nine charged appellant with violating 18 U.S.C. § 2252(a)(4)(B), for knowingly possessing one or more computer images depicting minors engaged in sexually explicit conduct that were transported in interstate commerce. Specifically, on June 18, 1997, appellant possessed numerous computer graphic images of minors engaged in sexually explicit conduct on computer disks that had been mailed and shipped and transported in interstate and foreign commerce and that were produced using materials that had been mailed and so shipped and transported. Indeed, appellant admitted in his plea agreement that a search of his home in June 1997 resulted in the recovery of hundreds of computer images that portrayed minors in sexually explicit conduct.

Finally, Count ten sought forfeiture of certain computer hardware used by appellant.

b) *Sentencing Chronology*

1) Initial PSRs—August 1998 to January 1999

On August 26, 1998, the Probation Department completed PSR # 1 using the 1997 U.S. Sentencing Guidelines Manual. PSR # 1 indicated that appellant was to be sentenced on September 16, 1998 and rec-

ommended a sentence of between 70 to 87 months. This recommendation was based on an offense level of 27 and a criminal history category of I, as described in detail below.

PSR #1 combined all counts to which appellant pleaded guilty into a single group pursuant to U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") § 3D1.2(c).[1] PSR #1 used count nine, 18 U.S.C. § 2252(a)(4)(B) (possession of pornographic material containing minors), to determine appellant's sentence because it was believed to offer the highest offense level of the counts in the group. The Guideline generally applicable for violating Section 2252(a)(4)(B) is U.S.S.G. § 2G2.4, "Possession of Materials Depicting a Minor in Sexually Explicit Conduct." However, Section 2G2.4 contains a cross-reference to Section 2G2.2, stating "[i]f the offense involved trafficking in material involving the sexual exploitation of a minor (including receiving, transporting, shipping, advertising, or possessing material involving the sexual exploitation of a minor with intent to traffic), apply § 2G2.2 . . . ." U.S.S.G. § 2G2.4(c)(2). PSR #1 determined that the cross-reference in Section 2G2.4 applied and computed appellant's total offense level pursuant to Section 2G2.2 as follows: base level 17 (see id. § 2G2.2(a)), plus two for material involving prepubescent minors (see id. § 2G2.2(b)(1)), plus four for material portraying sadistic or masochistic (hereinafter "SM") conduct (see id. § 2G2.2(b)(3)), plus five for a pattern of activity involving the sexual abuse or exploitation of minors (see id. § 2G2.2(b)(4)), plus two for the use of a computer (see id. § 2G2.2(b)(5)), less three for appellant's acceptance of responsibility and for his timely notice to the government of his intent to plead guilty (see id. § 3E1.1(a) & (b)(2)).

In the Northern District, objections to a PSR must be made within fourteen days. See N.D.N.Y. Local R.Crim. P. 32.1; see also Fed.R.Crim.P. 32(b)(6)(B) ("Within 14 days after receiving the presentence report, the parties shall communicate in writing to the probation officer, and to each other, any objections to any material information, sentencing classifications, sentencing guidelines ranges, and policy statements contained in or omitted from the presentence report."). Appellant objected to PSR #1 on several grounds, but the government did not. Following a presentence conference between Probation and the parties, the Probation Department issued a revised PSR, PSR #2, on October 26, 1998. The revisions did not alter any of the sentencing recommendations contained in PSR #1. However, PSR #2 specifically noted appellant's objections to both PSR #1 and #2 and indicated that the government "has no objections to the factual content or guideline computations contained in the revised report," but that it "may be filing an upward departure [motion] . . . ."

The suggestion that the government might seek an upward departure led to a testy interchange between appellant's counsel, William P. Fanciullo, and the prosecutor, Thomas Spina, Jr. Appellant's counsel, apparently in exasperation at the suggestion of an upward departure, asked the prosecutor how much time he wanted appellant to serve. According to appellant's counsel, the prosecutor responded, "I want him to die in jail." Appellant's counsel attests that he then asked whether he could "quote [the prosecutor] on that," and the prosecutor responded, "go ahead." The prosecutor then purportedly made some reference to how appellant's counsel would react if his daughter had been involved, and the two exchanged additional acrimonious words about whether appel-

---

1. Section 3D1.2 provides in relevant part that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule . . . (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2.

lant's counsel was making the case "personal." The government's view of the exchange is that appellant's counsel "lost his temper and questioned why the government was seeking a number of enhancements and what the government thought ... an appropriate sentence would be." The prosecutor claims that he responded by saying that he "would not be offended if the defendant died in jail based on his conduct."

PSR # 2 was sent to the district court in October 1998 and sentencing was scheduled for November 13, 1998 but then rescheduled for January 21, 1999. In a sentencing memorandum dated December 28, 1998, appellant objected to PSR # 2 on numerous grounds. He argued principally that count nine was not the major count and that the cross-reference in Section 2G2.4(c)(2) did not apply because the mere receipt of child pornography does not constitute "trafficking." He also argued that the pictures at issue did not involve SM conduct or other depictions of violence. Finally, he argued that: (i) certain calculations in PSR # 2 violated the Ex Post Facto Clause of the Constitution because the conduct at issue occurred prior to certain amendments to the 1996 Guidelines; (ii) the pictures at issue did not involve prepubescent minors; (iii) adding two levels for the use of a computer constituted impermissible double counting because it was duplicative of the cross-reference; (iv) Sections 2G2.4(c)(2) and 2G2.2(b)(3) of the Guidelines are "impermissibly vague"; and (v) the rule of lenity should apply and various closely contested issues should be decided in appellant's favor. In addition, appellant moved for a downward departure seeking leniency because of an extraordinary acceptance of responsibility and assistance, an excellent employment history, a lack of sophistication, and rehabilitation since the arrest.

In a sentencing memorandum dated December 30, 1998, the government responded to appellant's objections to the PSR and contended that an upward departure to a 120–month term of imprisonment was warranted because: (i) the Guidelines did not adequately take into consideration individuals like appellant who preyed on minors via the internet; (ii) appellant failed to take prophylactic measures when engaging in sexual acts with minors; (iii) appellant attempted to meet other minors; and (iv) appellant was benefitting from the grouping of the counts. However, the government expressly stated that the "grouping determination is not challenged," and that the district court "should adopt the factual contents of [PSR # 2] and its guideline calculations."

In a letter dated January 6, 1999, appellant's counsel complained that the "prosecution has gone overboard here and is painting an inaccurate and biased picture." He also continued to press the claims that the trafficking cross-reference did not apply and that the pictures did not involve prepubescent minors or SM conduct. Finally, he urged the court to deny the motion for an upward departure. In a letter dated January 14, 1999, the government reiterated the arguments for an upward departure and devoted significant attention to whether the SM enhancement should apply. In particular, the government contended that appellant's sexology expert, Dr. Charles Moser, was not qualified to address the age of females in certain photographs or whether the images depicted SM conduct. Appellant responded on January 19, 1999, stating that "[i]n view of the many derogatory comments and personal insults directed at Dr. Moser ... [he] felt compelled to respond," and attached a letter from Dr. Moser in which Dr. Moser complained that the government had "misrepresent[ed] my statements and [Mr. Spina's] criticisms are fallacious."

The next day, January 20, 1999, Dr. Moser contacted appellant's counsel to advise him that a former literary agent with whom Dr. Moser had worked had complained that the government was intimidating her over a book about sadomasochism for which Dr. Moser had once had some

responsibility but from which he had later disassociated himself. Counsel obtained an affidavit from the agent that he provided to the court at a conference held that day. The affidavit stated that prosecutor, "Thomas Spina called me this morning and threatened me with federal marshals and to bring me to Albany, unless I provided him with a copy of the contract regarding [a] book allegedly by Dr. Moser. . . ." The affidavit also stated that the agent told Mr. Spina that she was "uncomfortable" talking to him about the book, and that Mr. Spina then told her that she would be served with a subpoena if she refused to talk to him about it. The agent stated that she "definitely felt threatened and intimidated by Mr. Spina." Although the agent told Spina that "Dr. Moser had nothing to do with the final product," it was her opinion that Spina was "not . . . interested in the underlying facts, or [that] the final product [did] not reflect[ ] Dr. Moser's scientific positions."

At the January 20, 1999 conference, the district court adjourned the sentencing scheduled for January 21, 1999 and ordered a hearing on the SM enhancement. The hearing was scheduled to take place in early February 1999, and sentencing was rescheduled to March 1, 1999.

### 2) The Government's Change of Position and Subsequent PSRs

In a letter dated February 3, 1999, the government notified the court that "it does not appear that it will be necessary to conduct an evidentiary hearing as to the [SM] enhancement . . . . [because t]he government now withdraws its support for the enhancement and recommends that it not be imposed in light of the facts and circumstances presented in this case." The government later explained that the "primary reason the government withdrew its support for the [SM] enhancement [is] because there was only one photograph argu-

ably depicting a minor in a sadistic pose." More significantly, the government admitted as well that a study it had relied upon to support its endorsement of the SM enhancement "was called into question by the individual who conducted the study."

Even though five months had passed since PSR # 1, the letter also argued that appellant's offense level should be increased an additional five levels pursuant to U.S.S.G. § 2G2.2(b)(2) because the offense involved "distribution" [2] and that the grouping determination in PSR # 1–2 "may not have been proper here." It acknowledged that the objections to PSR # 1–2 were not made within fourteen days of the disclosure of the PSR but reasoned that "inasmuch as sentencing has now been set for March 1, 1999 and the defendant has ample time to address these objections, the government asks this Court to consider the objections."

In a letter dated February 19, 1999, appellant responded to the government's new arguments. He argued that the government was procedurally barred from asserting additional objections to PSR # 1–2 and was engaged in prosecutorial vindictiveness. He also argued that the government's new positions failed on the merits. Consequently, the district court *sua sponte* requested that the Probation Department submit a revised PSR and postponed sentencing to provide the parties with ample time to review the revised PSR and make objections. *See United States v. Johnson,* Nos. 97–CR–206, 98–CR–160, 1999 WL 395381, at *3 (N.D.N.Y. June 4, 1999).

Revised PSRs were issued on February 26, 1999 (hereinafter "PSR # 3") and April 16, 1999 (hereinafter "PSR # 4"). The parties' objections to PSR # 3 were noted in PSR # 4, but its revisions did not alter any of the sentencing recommendations contained in PSR # 3. Thereafter, appellant and the government wrote voluminous letters to the district court setting forth

---

**2.** Section 2G2.2(b)(2) provides that "[i]f the offense involved distribution, increase by the number of levels from the table in § 2F1.1 corresponding to the retail value of the material, but in no event by less than 5 levels." U.S.S.G. § 2G2.2(b)(2).

their respective positions on the merits and on appellant's allegation of vindictiveness.

■ Some of the correspondence from the prosecutor to the court employed quotations from internet chatroom conversations involving the appellant. Considerable license was taken by the prosecutor in editing some of these conversations. As presented to the district court, the government's version of the conversations failed to indicate where editing had taken place, and it is fair to say that the editing appeared to strengthen the government's position. However, the editing appears not to have affected the sentence ultimately imposed. Nevertheless, we expressly note our disapproval of this practice.

Before turning to the sentence imposed by the district court, we summarize the revised sentencing calculations contained in PSR #3–4, which adopted almost wholesale the government's newly asserted positions. Unlike PSR #1–2, which put all counts in a single group, PSR #3–4 recommended five groupings: (i) group one—count one of the indictment and counts one, two, three, four, and nine of the information; (ii) group two—counts five and six of the information; (iii) group three—count three of the indictment; (iv) group four—count seven of the information; and (v) group five—count eight of the information.

Offense levels for the various groups were calculated as follows. The highest offense level for group one was for count nine, which, after applying the cross-refer-ence in Section 2G2.4(c)(2), provided a base offense level of 17. Added to that were two levels for pictures of prepubescent minors engaged in sexually explicit conduct, five levels for distribution, five levels for a pattern of sexual exploitation of a minor, and two levels for use of a computer, for a total offense level of 31. *See* U.S.S.G. § 2G2.2(b). The highest offense level of the counts in group two was for count five, which has a base offense level of 17. The same increases used in group one were used in group two, resulting in a total offense level of 31. As to group three, count three provides a base level of 17, plus a five-level increase for distribution, a five-level increase for a pattern of activity involving the sexual exploitation of a minor, and a two-level increase for the use of a computer, resulting in a total offense level of 29. Group four also had a base offense level of 17 and PSR #3–4 added the same enhancements used in groups one and two for a total offense level of 31. Finally, group five was based on count eight and entailed identical calculations to those used in groups one, two, and four for a total offense level of 31.

As to the combined offense level for the various groups pursuant to Section 3D1.4,[3] PSR #3–4 calculated a total of five units (one for each group), which calls for an increase of four levels. *See* U.S.S.G. § 3D1.4(a). Adding four levels to 31, the combined offense level in PSR #3–4 was 35, less three levels for acceptance of responsibility and prompt notification of intent to plead guilty, for a total offense level of 32. The Guidelines range for that

---

**3.** Section 3D1.4 provides that the "combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated" in the table that appears in that section. U.S.S.G. § 3D1.4. Four levels are to be added to 3.5 to 5 units. *See id.* "In determining the number of Units":

(a) Count as one Unit the Group with the highest offense level. Count one additional Unit for each Group that is equally serious or from **1** to **4** levels less serious.

(b) Count as one-half Unit any Group that is **5** to **8** levels less serious than the Group with the highest offense level.

(c) Disregard any Group that is **9** or more levels less serious than the Group with the highest offense level. Such Groups will not increase the applicable offense level but may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level.

*Id.* (bold in original).

offense level is 121 to 151 months, as foreshadowed by the government's earlier motion for an upward departure to a sentence of at least 120 months.

### c) *Ultimate Sentence*

As noted, appellant had objected to much of PSR # 3–4, in addition to arguing that the prosecution's new position was vindictive and untimely. At sentencing, the district court addressed four of appellant's major objections relevant to this appeal: (i) the timeliness of the government's change of position; (ii) whether appellant engaged in distribution; (iii) which counts should be grouped and the propriety of adding distribution and pattern enhancements where the distribution predated the pattern; and (iv) whether using the 1997 Guidelines for all counts violated the Ex Post Facto Clause. *See United States v. Johnson*, 1999 WL 395381, at *4–10 (N.D.N.Y. June 4, 1999). We recount the district court's conclusions on each of these issues and then summarize the ultimate sentencing calculation.

### 1) Procedural Bar

The district court rejected appellant's argument that it should disregard the government's untimely objections to PSR # 1–2 on several grounds. First, it relied upon Fed.R.Crim.P. 32(b)(6)(D), which permits the court to allow a "new objection to be raised at any time before imposing sentence" for good cause shown. Second, the court noted that in *United States v. Young*, we held that "a court [can], in its discretion, deem a party to have forfeited any objection to the PSR by its failure to file a timely objection or to show good cause for a late filing, [but] a sentencing judge is not obliged to accept all unchallenged findings and recommendations made in the PSR." 140 F.3d 453, 457 (2d Cir.1998) (citations omitted). The district court explained that it had "independently ... questioned whether the grouping was proper, and whether, in light of *Lorge*, [appellant] was involved in 'distribution.'"

*Johnson*, 1999 WL 395381, at *3. Finally, the court relied upon *Young* in ruling that "[t]he sentencing court may impose sentencing enhancements belatedly suggested by the Government and not contained in the PSR, provided the defendant is afforded an adequate opportunity to respond...." *Young*, 140 F.3d at 457 (citation omitted).

### 2) Distribution Enhancement

The district court also rejected appellant's arguments concerning the distribution enhancement. It concluded that the positions advanced by appellant were "foreclosed" based on *United States v. Lorge*, 166 F.3d 516, 519 (2d Cir.1999), where we held that a defendant was engaged in distribution within the meaning of Section 2G2.2(b)(2) by merely transferring graphic images of child pornography. *See Johnson*, 1999 WL 395381, at *6 (citing other circuits with similar holdings). The district court therefore held that the distribution enhancement applied, but only to certain groups.

### 3) Grouping and Pattern Enhancement

The district court next addressed the grouping issues and appellant's objection to the groups used in PSR # 3–4. Appellant argued that if distribution were added as a specific offense characteristic, then all of the transmit/transport counts (count three of the indictment and counts five, six, seven, and eight of the information) could not be separate groups pursuant to U.S.S.G. § 3D1.2(c). See *supra* note 1. The court concluded that the issue hinged on determining the harm caused by appellant's conduct. *See* U.S.S.G. § 3D1.2 (providing that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group"). Noting that "[m]ost circuits agree that children are the victims of these sex crimes and, therefore, ... it is inappropriate to group

under § 3D1.2(b),"[4] the district court nevertheless concluded that Section 3D1.2(c) may apply even if the victims are different. *Johnson*, 1999 WL 395381, at *7. However, it rejected appellant's argument that including the distribution enhancement necessarily requires the transportation counts to be grouped under Section 3D1.2(c) because an individual can "knowingly transport or ship a visual depiction of a minor engaged in sexually explicit conduct without engaging in distribution." *Id.* at *7. The district court then concluded that counts five, six, and seven should be grouped because they involved identical acts occurring in September 1996 and the distribution enhancement applied because the conduct in these counts actually involved distribution. Count three of the indictment, charging conduct that occurred in June 1997, and count eight of the information, charging conduct in December 1995, however, were not considered to be contemporaneous with the conduct in counts five, six, and seven, or with one another. Thus, the district court decided these counts were to be in their own separate groups, and that the distribution enhancement applied to count eight but not to count three of the indictment. *See id.* at *8.

As to the pattern enhancement, the district court determined that PSR # 4 properly grouped count one of the indictment with counts one, two, three, four, and nine of the information and that it properly added a five-level enhancement to that group for a pattern of sexual abuse or exploitation of a minor. The district court decided, however, that the remaining counts involved transportation or distribution of child pornography and not efforts to engage in sexual conduct with a minor. Thus, the district court reasoned, the counts did not involve substantially the same harm and should be treated separately. Because the pattern enhancement

had already been applied to group one, however, the court decided that the remaining groups should not include the enhancement to avoid double counting. *See id.* at *8–9.

The district court rejected appellant's argument that he should not receive a five-level enhancement for a pattern of conduct involving the sexual abuse or exploitation of a minor for those counts that predated his actual sexual encounters with juvenile females. The district court noted that the application notes to Section 2G2.2 make it clear "that it is irrelevant whether the abuse or exploitation occurred during the course of the offense .... [meaning] that it could have occurred prior to or after the offense conduct." *Id.* at *9.

#### 4) Ex Post Facto Issues

The district court agreed with appellant that using the 1997 Guidelines for certain conduct that occurred prior to November 1, 1996, violated the Ex Post Facto Clause because the base level for the sex offenses at issue was raised from 15 to 17 when the Guidelines were amended in November 1996. Noting the "possibility that the one-book rule might not be fully applicable to sentences based on multiple counts," *id.* at *10 (quoting *United States v. Santopietro*, 166 F.3d 88, 95 (2d Cir.1999)), the district court concluded that the best solution in a case involving multiple counts was to "apply the earlier Sentencing Manual to those counts as to which the underlying conduct was completed before the later version became effective ... and apply the current version to counts involving subsequent conduct...." *Id.* at *10.

#### 5) Sentencing Calculation

Based on its resolution of the above objections and issues, the district court combined the counts into the following

---

**4.** Section 3D1.2 provides that counts should be grouped because they involve substantially the same harm "[w]hen counts involve the *same victim* and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b) (emphasis added).

four groups: (i) group one—indictment count one, information counts one, two, three, four, and nine; (ii) group two—information counts five, six, and seven; (iii) group three—indictment count three; and (iv) group four—information count eight. It then proceeded to discuss its offense level calculations for each group.

As to group one, the district court agreed that count nine provided the highest offense level and that the trafficking cross-reference applied. *Id.* at *11 and *11 n. 3 (relying on *United States v. Canada*, 110 F.3d 260, 264 (5th Cir.) (per curiam)). Accordingly, the calculation for this group was as follows: base offense level 17, plus five for a distribution enhancement, plus two for a prepubescent-victim enhancement, plus five for a pattern enhancement, plus two for use of a computer, for a total offense level of 31. The court rejected appellant's argument that adding the computer-use enhancement would be duplicative of the trafficking cross-reference and therefore constitute double counting. "One can traffic in child pornography without using a computer much like one could commit a robbery without the use of a gun." *Id.* at *11 n. 5.

Group two consisted of three counts with identical underlying conduct and each count in the group therefore provided an identical base level of 15 (using the 1995 Guidelines). Added to the base level was two for a prepubescent-victim enhancement and five for a distribution enhancement, for a total offense level of 22. No computer-use enhancement was appropriate under the 1995 Guidelines, and no pattern enhancement was applied because appellant had already received an enhancement for a pattern in group one. *See id.* at *11.

Group three consisted solely of indictment count three and the offense level was calculated as follows: base level 17, plus two for use of computer, for a total offense level of 19. No distribution or pattern enhancements were applied because the district court determined that to do so would constitute impermissible double counting. *See id.*

Group four consisted solely of information count eight and conduct that occurred in December 1995. Applying the 1995 Guidelines, the offense level was calculated as follows: base level 15, plus two for a prepubescent-victim, plus five for distribution, for a total offense level of 22.

The district court determined the combined offense level to be 31 because, utilizing the table from Section 3D1.4, there was only one unit corresponding to a zero-level increase. That combined offense level was adjusted to a final offense level of 28 after subtracting three levels for acceptance of responsibility and timely notification of intent to plead guilty. The applicable Guidelines range for this offense level was 78 to 97 months. The court sentenced appellant to 88 months of imprisonment. *See id.* at *12. Although the district court "recognize[d] full well that it ha[d] the ability, discretion to depart upward or downward as requested by the Government and the defendant," it declined to do so because it did not "believe that an upward or downward departure is appropriate under the circumstances of this case."

Finally, with regard to appellant's claim of vindictiveness, the district court stated:

I don't know if I made this clear or not, but the Court is gonna make a finding that there was not prosecutorial misconduct involved in the case. Although a lot of things got done and redone, a lot of the problems were caused by the Court's own waffling, so to speak....

The appeal and cross-appeal followed.

## DISCUSSION

Appellant contends that his sentence must be vacated for several reasons. First, he contends that the government engaged in vindictiveness and/or misconduct and was procedurally barred from raising untimely objections to the original PSR. On the merits of the sentence im-

posed, appellant makes several arguments concerning count nine and the district court's groupings.

In its cross-appeal, the government argues that the district court erred in declining to impose a pattern enhancement as to each of the groups of offenses for which the offense level was determined based on Section 2G2.2. It also argues that the district court erred by grouping count seven of the information with counts five and six.

▮ In assessing these claims and reviewing the sentence imposed by the district court, we review *de novo* the court's legal determinations. *See United States v. Kinney*, 211 F.3d 13, 19 (2d Cir.2000). We give "due deference," however, "to the district court's application of the guideline provision to the facts," *id.*, and accept the district court's findings of fact unless they are "clearly erroneous," *United States v. Chestaro*, 197 F.3d 600, 610 (2d Cir.1999) (quoting *United States v. Franklyn*, 157 F.3d 90, 97 (2d Cir.1998)), *cert. denied*, —— U.S. ——, 120 S.Ct. 2694, 147 L.Ed.2d 965 (2000). Moreover, "disputed sentencing factors need only be proved by a preponderance of the evidence." *United States v. Echevarria*, 33 F.3d 175, 178 (2d Cir.1994) (internal quotations and citations omitted).

a) *The Conduct of the Prosecution*

Appellant argues that the sentencing proceedings subsequent to the preparation of PSR #2 were tainted by the vindictive conduct of the prosecutor. In his view, he must therefore be sentenced on the basis of PSR #2.

▮ "Actual vindictiveness must play no part in a prosecutorial or sentencing decision and, since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of his rights, the appearance of vindictiveness must also be avoided." *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir.1999) (quoting *United States v. King*, 126 F.3d 394, 397 (2d Cir.1997)).

In the present case, the only matter that may have been tainted—or might appear to have been tainted—by the conduct of the prosecution is the bringing of the cross-appeal. In sentencing appellant, the district court independently questioned the groupings and lack of distribution enhancement in PSR #1–2 and *sua sponte* requested that a revised PSR be prepared. *See Johnson*, 1999 WL 395381, at *3; *see also United States v. Norris*, 159 F.3d 926, 928 (5th Cir.1998) (referring to situation where district court *sua sponte* requested revised PSR where parties did not object to PSR). The district court's independent decision with regard to the sentence makes it clear that the alleged vindictiveness of the prosecutor could not have affected the sentence imposed. Moreover, because the district court made it clear on the record that it had independently arrived at the sentence, the appearance of a taint of vindictiveness was also avoided. Although appellant is free to challenge the sentence imposed by the district court on the merits, he is not, therefore, entitled to be sentenced on the basis of PSR #2, unless review of the merits indicates that PSR #2's analysis of the proper sentence is correct.

▮ However, the government has chosen to take a cross-appeal and has thereby forced the issue of its conduct on us. To find "actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in a rare case.'" *Johnson*, 171 F.3d at 140–41 (quoting *United States v. Goodwin*, 457 U.S. 368, 380–81 & nn. 12–13, 384 & n. 19, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); *King*, 126 F.3d at 397). A "presumption of vindictiveness arises when the circumstances of the case create a 'realistic likelihood' of prosecutorial vindictiveness." *Id.* at 141 (quoting *King*, 126 F.3d at 397). In deciding whether to find a presumption of vindictiveness, the "relevant question … is whether there is a 'realistic likelihood' that the Government acted out of a vindic-

tive motivation, rather than a legitimate one." *Id.*

■ The district court concluded that there was not "prosecutorial misconduct" in this case, which we take as a finding of no actual vindictiveness in the proceedings prior to the cross-appeal. However, we need not review this finding, because, whether or not there was actual vindictiveness in the proceedings before, or in the bringing of, the cross-appeal, we must in the exercise of our supervisory power decline to entertain it given the appearance created by the circumstances here.

In its sentencing decision, the district court noted that Fed.R.Crim.P. 32(b)(6)(D) permits courts to allow objections to a PSR to be raised at any time for good cause shown before imposing sentence. The district court also correctly noted that in *United States v. Young,* 140 F.3d 453, 457 (2d Cir.1998), we held that a sentencing court, in the exercise of its power to impose the sentence it deems proper notwithstanding the recommendations of a PSR, may impose sentencing enhancements belatedly suggested by the government so long as the defendant is given an adequate opportunity to respond. *Young,* however, is not applicable to the cross-appeal. *Young* held only that a sentencing court's power to impose a sentence independent of the parties' arguments and recommendations of a PSR cannot be diminished by the failure of the government to make various claims in a timely fashion. In the present case, the cross-appeal seeks to overturn the district court's sentencing decision.

The cross-appeal argues that the pattern enhancement should be imposed for each group of offenses as determined by the district court and that count seven of the information should not have been grouped with counts five and six. However, the objection to the grouping of count seven of the information with counts five and six is clearly inconsistent with the government's pre–February–1999 position that a single group was appropriate. Because the claim for multiple pattern enhancements depends upon the existence of multiple groups, it too is inconsistent with the government's pre–February–1999 position.

PSR # 1 was issued in late August 1998. As described in detail above, the government affirmatively stated that it had no objection to PSR # 1–2's recommendation of a single grouping and overall Guidelines' calculations. It was only after the parties had expended much time, expense, and effort in contesting appellant's objections to PSR # 1–2 and in wrangling acrimoniously, and after the government's case for the SM enhancement had collapsed, that the government's objections to the single grouping were raised.

The government contends that its delay in challenging the single grouping occurred because it had "only recently discovered case law supporting" its newly adopted position. While the caselaw may have been recently discovered, it was not new.[5] The principal cases relied upon by the government in its February 1999 letter had been decided by 1997. There is no doubt, therefore, that the government could have raised its grouping arguments in response to PSR # 1, and, there being no other reason given for the delay, it can hardly be said that the government showed "good cause" for its belated objections to PSR # 1. Fed.R.Crim.P. 32(b)(6)(D). Indeed, the district court never so found.

It is true that the government appears to have decided early on that a 120–month

---

5. In contrast, the distribution enhancement did find support in very recent caselaw. On February 2, 1999, the day before the government's change of position, *United States v. Lorge,* 166 F.3d 516 (2d Cir.), *cert. denied,* 526 U.S. 1058, 119 S.Ct. 1372, 143 L.Ed.2d 531 (1999), held that the distribution enhance-

ment is appropriate where an individual transfers graphic images of child pornography to other individuals regardless of pecuniary gain. The government properly informed the district court of that decision on February 5.

sentence was appropriate. In that sense, the government has taken a consistent position. However, we cannot cleanse this record of the appearance of a radical and belated change in the government's position as to grouping as a result of a vigorous defense effort to minimize the sentence that appeared to be on the verge of success at least with regard to the SM enhancement. Whether or not the government's change in position was the result of actual vindictiveness—an issue we need not reach—entertaining the cross-appeal would expose appellant to a much greater sentence than would have been imposed had he simply acquiesced in—instead of contesting—PSR # 1. We believe that in such circumstances it is within our power to decline to entertain the cross-appeal and that it would be appropriate to do so.

■ "Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress." *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (internal citations, quotations, and brackets omitted); *see also United States v. Perez,* 904 F.2d 142, 147–50 (2d Cir.1990) (discussing supervisory power but declining to exercise it to invalidate longer sentences imposed on defendants following a retrial where first conviction was successfully appealed). Although generally the exercise of supervisory power arises in the context of requests by defendants to vacate convictions (*see, e.g., United States v. Myers,* 692 F.2d 823, 860 (2d Cir.1982) (noting availability of court's limited supervisory power to vacate convictions in rare cases), dismiss indictments (*see, e.g., Simmons,* 812 F.2d at 820–21 (refusing to use supervisory power to dismiss indictment for undue delay)), or invalidate sentences (*see, e.g., Perez,* 904 F.2d at 147–50), the general principle that "federal courts have authority under their supervisory powers to oversee the administration of criminal justice within federal courts," *Daye v. Attorney General,* 712 F.2d 1566, 1571 (2d Cir.1983), certainly applies to sentencing proceedings as well. "Given the government's often decisive role in the sentencing context, we will not hesitate to scrutinize the government's conduct to ensure that it comports with the highest standards of fairness." *United States v. Lawlor,* 168 F.3d 633, 637 (2d Cir.1999).

■ A criminal defendant must have the right to contest the recommendations of a PSR agreed to by the government without fear that, if he or she experiences some success, the government will respond with a new and substantially different position with regard to Guidelines calculations and be able to force courts to entertain the new arguments. *See King,* 126 F.3d at 397 ("[T]he fear of . . . vindictiveness may unconstitutionally deter a defendant's exercise of [his rights] . . . ." (quoting *North Carolina v. Pearce,* 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969))); *Johnson,* 171 F.3d at 141 (discussing presumption of vindictiveness where charges are brought possibly "in retaliation for [defendant's] exercise of his rights"). To be sure, as *Young* held, a sentencing judge has the power to impose the sentence the judge believes appropriate, and this power cannot, absent extraordinary circumstances, be diminished or negated by the failure of the government to assert its position in a timely fashion. However, where the government belatedly asserts a new position in the context of an erosion of its initial position, the government has no automatic right to a district court's consideration of that position, much less to an appellate court's entertaining of an appeal seeking to overturn a district court's rejection of the new position, at least absent a showing of good cause as required by Rule 32(b)(6)(D).

In the present case, no good cause for the government's change in position on the

grouping of counts has ever been offered.[6] Worse, the record contains evidence of the prosecutor's displeasure over appellant's challenge to the SM enhancement and his conclusion that that challenge would probably succeed. The editing of appellant's chatroom conversations described above adds to the appearance of a certain over-zealousness. The appearance that we condemned in *King* thus permeates the cross-appeal. *See King*, 126 F.3d at 397.

Were we to entertain the cross-appeal and reverse, appellant would face an increase in sentence that would be correctly perceived as the result of his having challenged, *inter alia*, the SM enhancement. The cross-appeal challenges a sentence that is above—barely so but nevertheless above—the Guidelines range recommended in PSR # 1–2. Had appellant not challenged PSR # 1–2, he would have received at worst the 88 months imposed independently by the district court. That sentence itself indicates that the government's original motion for an upward departure to a sentence of at least 120 months would have been denied, and that denial would not have been appealable by the government. *See United States v. Stephenson*, 183 F.3d 110, 120 (2d Cir.) (holding that denial of downward departure motion is not appealable unless district court misapprehends its authority to depart), *cert. denied*, —— U.S. ——, 120 S.Ct. 517, 145 L.Ed.2d 400 (1999). Were we to entertain the cross-appeal and reverse, therefore, appellant would be left in circumstances far worse than he would have faced had he simply concurred in the recommendations of PSR # 1. We believe that entertaining the cross-appeal in such circumstances would be inappropriate and therefore offer no comment on the merits.

### b) *The Merits of the Ultimate Sentence*

Appellant challenges several aspects of the district court's sentence with respect

to its calculations based on count nine of the information. Specifically with regard to count nine, appellant argues: (i) it is not the major count; (ii) it did not involve trafficking or distribution; (iii) even if it did involve trafficking and/or distribution, the Ex Post Facto Clause requires application of pre-amendment Guidelines; and (iv) because count nine has a sixty-month statutory maximum, appellant's sentence cannot exceed sixty months. In addition, appellant contends that the district court's sentence impermissibly double counts computer transmissions and computer use and that the pertinent Guidelines are unconstitutionally vague. Finally, he asserts that the rule of lenity requires resolution of any ambiguities in his favor. We reject each of those arguments.

### 1) Count Nine, Trafficking, and Distribution

■ We reject the contention that count nine—charging the possession of numerous computer graphic images depicting minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B)—is not the major count and that count nine did not involve trafficking or distribution thereby rendering the cross-reference in Section 2G2.4(c)(2) inapplicable. A sentence for possessing child pornography pursuant to 18 U.S.C. § 2252(a)(4)(B) is ordinarily calculated under Section 2G2.4 of the Guidelines. *See* U.S.S.G. § 2G2.4 commentary. That section, however, contains a cross-reference to Section 2G2.2 and mandates the application of Section 2G2.2 if the possession offense involved "trafficking in material involving the sexual exploitation of a minor (including receiving, transporting, shipping, advertising, or possessing material involving the sexual exploitation of a minor with intent to traffic)." U.S.S.G. § 2G2.4(c)(2). Accordingly, even if an individual is convicted under 18 U.S.C. § 2252(a)(4)(B) of possession,

---

6. At oral argument, we were told simply that any prosecutor in the Northern District would have done what was done here.

98

the Guidelines expressly contemplate more severe punishment by application of Section 2G2.2 if the conduct involved something more than "simple possession." *See United States v. Grosenheider,* 200 F.3d 321, 332 (5th Cir.2000) (explaining differences between various offenses concerning child pornography). Indeed, "[i]t is clear that Congress established a series of distinctly separate offenses respecting child pornography, with higher sentences for offenses involving conduct more likely to be, or more directly, harmful to minors than the mere possession offense." *Id.* at 332–33.

■ The district court concluded, as did each of the PSRs, that the cross-reference in Section 2G2.4(c)(2) applied to appellant's possession offense because his offense involved "trafficking." *See Johnson,* 1999 WL 395381, at *11 n. 3. That conclusion was not error. In fact, appellant admitted in his plea agreement that he possessed hundreds of computer images portraying minors in sexually explicit conduct, and he further conceded that he did "send and receive" child pornography. *Id.* at *6. Such dissemination of child pornography is likely to expand the market for it and thus to cause more harm than mere possession. *Cf. United States v. Ellison,* 113 F.3d 77, 81 (7th Cir.) (upholding application of § 2G2.2 to defendant who knowingly received child pornography and noting that § 2G2.2 "is intended to punish conduct that creates or strengthens the market for child pornography"); *United States v. Deane,* 914 F.2d 11, 14 (1st Cir.1990) (applying broad reading to § 2G2.2 and extending it to passive offenders in light of Sentencing Commission's actions and findings).

Moreover, "exchange or barter is a form of 'trafficking.' 'Traffic,' like 'trade,' includes both 'the business of buying and selling for money' and 'the business of exchanging commodities by barter....'" *United States v. Horn,* 187 F.3d 781, 791 (8th Cir.1999) (quoting *May v. Sloan,* 101 U.S. 231, 237, 25 L.Ed. 797 (1879) and

citing Webster's Third New International Dictionary at 2422 (1986) (defining "traffic" as "the activity of exchanging commodities by bartering or buying and selling")), *cert. denied,* —— U.S. ——, 120 S.Ct. 1442, 146 L.Ed.2d 330 (2000). Thus, the district court properly concluded that appellant engaged in "trafficking" as that term is used in Sections 2G2.4 and 2G2.2 because, *inter alia,* appellant admitted that he traded or exchanged child pornography.

■ We likewise reject appellant's contentions concerning the distribution enhancement. *See* U.S.S.G. § 2G2.2(b)(2). As discussed by the district court, appellant's arguments are foreclosed by our decision in *United States v. Lorge,* 166 F.3d 516 (2d Cir.), *cert. denied,* 526 U.S. 1058, 119 S.Ct. 1372, 143 L.Ed.2d 531 (1999). Like the defendant in *Lorge,* appellant "transferred graphic images of child pornography to other individuals, [and therefore] he engaged in 'distribution' within the meaning of the Guidelines Section 2G2.2(b)(2)." *Id.* at 519 (refusing to define "distribution" narrowly to require transaction for pecuniary gain).

■ Appellant's additional contention that his sentence cannot exceed 60 months because count nine carries a 60–month statutory maximum sentence also lacks merit. Appellant pleaded guilty to eleven substantive counts in this case. Each of the counts, with the exception of count nine, carries a statutory maximum term of either 120 months or 180 months. The district court sentenced appellant to a term of 60 months imprisonment for count nine, and to a term of 88 months imprisonment for each of the remaining ten substantive counts. The district court stated that "[a]ll terms shall run concurrently." However, the Guidelines provide as to "Sentencing on Multiple Counts of Conviction" that:

If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of

the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. § 5G1.2(d). Therefore, even though the district court could have sentenced appellant to only a sixty-month term for count nine, that sixty-month sentence runs consecutively to the sentences imposed on the other counts to the extent necessary to achieve the total punishment of 88 months. *See United States v. Griffith,* 85 F.3d 284, 288–89 (7th Cir.1996) (rejecting argument that district court could not sentence defendant, who was convicted of multiple counts, to more than statutory maximum for money laundering where money laundering Guidelines produced highest offense level of group).

### 2) Double Counting, Unconstitutional Vagueness, and Rule of Lenity

■ We also reject appellant's arguments concerning alleged impermissible double counting. We do so for substantially the reasons articulated by the district court. *See Johnson,* 1999 WL 395381, at *11. As the district court correctly explained, "[o]ne can traffic in child pornography without using a computer much like one could commit a robbery without the use of a gun." *Id.* at *11 n. 5. "Impermissible double counting of an enhancement occurs if a guideline provision is used to increase punishment on account of a kind of harm already fully accounted for...." *United States v. Calozza,* 125 F.3d 687, 691 (9th Cir.1997). Here, however, the aggravating factor of using a computer had not already been taken into account simply because the district court applied the cross-reference in Section 2G2.4(c)(2) for trafficking. The use of computers to traffic in child pornography heightens the difficulty of detection by law enforcement, has the potential of vastly expanding the market for such materials, and creates unique access to minors. *See generally*

Joseph N. Campolo, Note, *Childporn.gif: Establishing Liability For On-line Service Providers,* 6 Fordham Intell. Prop. Media & Ent. L.J. 721, 738–45 (1996) (explaining how electronic information services facilitate the transmission of child pornography).

■ Likewise, we reject appellant's claim that "the laws and guidelines in this case are constitutionally deficient in that they are vague and do not give adequate notice of what is prohibited and the punishment that will ensue." It is not clear whether the Guidelines are subject to attack on vagueness grounds. *See United States v. Wivell,* 893 F.2d 156, 159 (8th Cir.1990) ("[T]he Sentencing Guidelines are simply not susceptible to a vagueness attack."). Even if they are, however, we have not had difficulties of constitutional dimensions in interpreting the provisions at issue, and we are simply not persuaded by appellant's arguments to the contrary.

■ Finally, we reject appellant's rule-of-lenity argument. Assuming that the rule of lenity applies to the Sentencing Guidelines (a question that we have not yet decided, *see United States v. Westcott,* 159 F.3d 107, 117 n. 5 (2d Cir.1998); *United States v. Torres–Echavarria,* 129 F.3d 692, 699 n. 3 (2d Cir.1997)), the provisions at issue here, to the extent they are ambiguous at all, are not so cryptic as to leave us "with no more than a guess" as to the proper resolution. *United States v. Dauray,* 215 F.3d 257, 2000 WL 770540, at *8 (2d Cir.2000) (holding that rule of lenity applied to ambiguous language of statute).

We have considered appellant's remaining arguments and find them to be without merit.

### CONCLUSION

We therefore decline to entertain the cross-appeal and affirm the 88–month sentence.