UNITED STATES of America,
Appellee,

v.

Mark ROLFSEMA, Defendant,
Appellant.

No. 05–2898.

United States Court of Appeals,
First Circuit.

Heard Sept. 8, 2006.

Decided Nov. 17, 2006.

Melvin Norris, with whom Richard J. Farrell was on brief, for appellant.

Dana Gershengorn, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

Before BOUDIN, Chief Judge, TORRUELLA, Circuit Judge, and SCHWARZER,* Senior District Judge.

TORRUELLA, Circuit Judge.

On June 6, 2005, Mark Rolfsema ("Rolfsema") pled guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). On December 12, 2005, the district court sentenced Rolfsema to 57 months of imprisonment and 36 months of supervised release. Rolfsema now appeals his sentence.

## I. *Background*

In September 2004, the Federal Bureau of Investigation ("FBI") received information that Rolfsema was in possession of child pornography. The FBI obtained a search warrant for Rolfsema's residence, which it executed on September 24. At Rolfsema's house, the FBI found CDs and floppy disks containing images of child pornography. An arrest warrant was issued for Rolfsema. The Royal Canadian Mounted Police arrested Rolfsema in Canada, whereupon he was returned to custody in Massachusetts. On February 9, 2005, Rolfsema was indicted on one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

Rolfsema pled guilty on June 6, 2005, without a plea agreement. The district court accepted Rolfsema's guilty plea and scheduled a sentencing hearing. On August 3, 2005, the probation office issued its presentence report ("PSR"). The PSR calculated a base offense level of 15, U.S.S.G. § 2G2.4(a) (2003), which was increased by two levels for material involving a prepubescent minor, § 2G2.4(b)(1),

---

* Of the Northern District of California, sitting by designation.

two levels for the use of a computer, § 2G2.4 (b)(3), and five levels for the involvement of 600 or more images, § 2G2.4(b)(5)(D). The offense level was reduced by three levels for acceptance of responsibility, § 3E1.1, for a total recommended offense level of 21.

On August 17, 2005, the Government submitted its objections to the PSR. The Government suggested that the total offense level should be increased by two levels under U.S.S.G. § 2G2.4(b)(2) (2003) for the possession of "ten or more ... items" because it found that Rolfsema had possessed ten or more images of child pornography. The Government also suggested that if an increase under § 2G2.4(b)(2) applied, the five-level increase under § 2G2.4(b)(5)(D) for possession of 600 or more images should not apply. Thus, the Government argued, the total recommended offense level should be 18, rather than 21. The probation office responded on August 31, 2005, stating that it needed more information to determine whether the two-level increase under § 2G2.4(b)(2) should apply. Further, the probation office stated that even if the two-level enhancement under § 2G2.4(b)(2) did apply, the five-level increase under § 2G2.4(b)(5)(D) should also apply.

On September 8, 2005, the district court held a sentencing hearing. During the hearing, Rolfsema stated that he had not seen the PSR and that his attorney had promised him he would be released for "time served" following his guilty plea. The district court provided Rolfsema with a copy of the PSR and appointed new counsel for him. Rolfsema also moved to withdraw his guilty plea. The district court denied the motion, but stated that it would allow Rolfsema's new attorney to file a motion to withdraw. During this hearing, the court also considered the disputes between the Government and the probation office regarding the PSR. The court stated that it wanted more information as to the number of CDs seized and as to the number of child pornography images on the CDs before it would determine whether the enhancements under § 2G2.4(b)(2) and § 2G2.4(b)(5)(D) could be applied together.

New counsel was appointed for Rolfsema, and on November 1, 2005, Rolfsema notified the court by letter that he would not be withdrawing his guilty plea. Prior to sentencing, the FBI reviewed the images seized from Rolfsema's home and advised the Government that some of the images depicted sadistic or masochistic conduct. The Government then notified the probation office and counsel for Rolfsema of this information. The Government also told the probation office and Rolfsema's counsel that it had reviewed the evidence and found that Rolfsema had possessed more than ten CDs containing child pornography. The probation office then confirmed the § 2G2.4(b)(2) enhancement for ten or more items and revised the sentencing memorandum to add a two-level enhancement for images depicting sadistic or masochistic conduct under U.S.S.G. § 2G2.4(b)(4) (2003). Rolfsema submitted written objections to the revised PSR, contending, *inter alia*, that the inclusion of the new enhancement for sadistic or masochistic images was untimely, and that the two-level enhancement under § 2G2.4(b)(2) should be applied instead of the five-level enhancement under § 2G2.4 (b)(5)(D).

On December 12, 2005, the court held a sentencing hearing. After acknowledging the dispute between the probation office and the Government as to whether § 2G2.4(b)(2) and § 2G2.4(b)(5)(D) could be applied together, the court decided to apply only the five-level enhancement under § 2G2.4(b)(5)(D). The court then ad-

dressed the two-level enhancement for depictions of sadistic or masochistic conduct under § 2G2.4(b)(4). Rolfsema objected to the enhancement on the ground that it was untimely raised by the Government; the court overruled the objection. Rolfsema raised a second objection to the § 2G2.4(b)(4) enhancement on the ground that the evidence did not support it. After reviewing images seized from Rolfsema's house, the court found that the enhancement applied. The court then calculated a total offense level of 25 under the sentencing guidelines, which provided for a sentencing range of 57 to 71 months of imprisonment. The court rejected arguments from Rolfsema for a non-guidelines sentence and sentenced him to 57 months of imprisonment and 36 months of supervised release.

## II. *Discussion*

■ Rolfsema's initial brief raises two objections to his sentence. First, Rolfsema argues that the enhancement for the depiction of sadistic or masochistic conduct under § 2G2.4(b)(4) was raised in an untimely fashion and that it was raised vindictively by the Government in response to his assertion of his right to counsel. Second, Rolfsema argues that the two-level enhancement for ten or more items under § 2G2.4(b)(2) should have been applied instead of the five-level enhancement for 600 or more images under § 2G2.4(b)(5)(D). Lastly, Rolfsema filed a *pro se* supplemental brief suggesting that the district court had no evidence before it to sustain its sentence. We review a sentencing court's conclusions of law *de novo*, *United States v. Robinson*, 433 F.3d 31, 35 (1st Cir.2005), and factual determinations for clear error, *United States v. Luciano*, 414 F.3d 174, 180 (1st Cir.2005).

### A. *The § 2G2.4(b)(4) Enhancement*

■ Rolfsema first argues that the enhancement for the depiction of sadistic or

masochistic conduct was error because the Government failed to raise it in its initial objections. Rule 32(f)(1) of the Federal Rules of Criminal Procedure states: "Within 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." It is undisputed that the Government did not submit information regarding the content of the images within this fourteen day time period. However, in *United States v. Soto–Beníquez*, 356 F.3d 1, 52 (1st Cir. 2003), we held that prejudice resulting from the Government's late submission of sentencing information might be cured by giving the defendant an adequate opportunity to respond. *See also United States v. Young*, 140 F.3d 453, 457 (2d Cir.1998) ("The sentencing court may impose sentencing enhancements belatedly suggested by the Government and not contained in the PSR, provided the defendant is afforded an adequate opportunity to respond to the Government's late submission and any revision of the PSR.") (internal citations omitted). Here, any prejudice resulting from the Government's late submission of information was cured because Rolfsema clearly had an opportunity to respond: Rolfsema's objections to the § 2G2.4(b)(4) enhancement were noted in the PSR, and the court heard Rolfsema's arguments on the enhancement at the December 12, 2005 hearing. *See United States v. Pérez–Ruiz*, 421 F.3d 11, 17 (1st Cir.2005) (finding no prejudice where the prosecution first raised objections to sentencing calculations on the day of the sentencing hearing but where the defendant had an opportunity to argue against the new calculations). Accordingly, because we find that Rolfsema suffered no prejudice by the lateness of

the Government's submission, the sentencing court's consideration of the late submission is not reversible error.

▇▇▇ Rolfsema next attacks the § 2G2.4(b)(4) enhancement because he claims it was raised vindictively by the Government. The Supreme Court held in *North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), that a defendant could not be given a higher sentence simply because he had exercised his constitutional right to counsel. Accordingly, the Government may not vindictively seek to raise a defendant's sentence solely because of that defendant's exercise of a constitutional right. *See United States v. Mazzaferro*, 865 F.2d 450, 460 (1st Cir.1989); *see also United States v. Johnson*, 221 F.3d 83 (2d Cir.2000) (declining to consider a Government cross-appeal because it may have been motivated by vindictiveness towards the defendant). While we may presume vindictiveness when the Government changes its legal position after the exercise of a constitutional right by the defendant, the harshness of this presumption requires that we do so only when "a reasonable likelihood of vindictiveness exists." *United States v. Goodwin*, 457 U.S. 368, 374, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

We do not find any evidence in the record that indicates a likelihood of vindictiveness on the part of the prosecution. A comparison with *Johnson*, the case relied upon by Rolfsema, is instructive: in *Johnson*, the Government initially raised no objection to a single grouping of all offenses for sentencing purposes. 221 F.3d at 87. Johnson nevertheless objected to the PSR and engaged in an "acrimonious" debate over sentencing in which the Government was the losing party. *Id.* The Government then completely altered its legal position, and instead suggested multiple groupings of offenses, which would

have resulted in a significant increase in the defendant's total offense level. *Id.* at 88. Because of the appearance of vindictiveness, the Second Circuit declined to entertain the Government's cross-appeal of the defendant's sentence. *Id.* at 96.

In the instant case, there was no radical change in position. The Government did not initially take a position on the application of the § 2G2.4(b)(4) enhancement because it had not reviewed the content of the pictures seized at Rolfsema's apartment. The Government's main objection to the initial PSR, in fact, was an objection to the application together of a two-level enhancement under § 2G2.4(b)(2) and a five-level enhancement under § 2G2.4(b)(5)(D), an objection the Government maintained throughout the sentencing process and which resulted in a lower total offense level for Rolfsema. Nor does there seem to have been any vindictiveness after Rolfsema asserted his right to counsel. The Government stated that it would not object to Rolfsema changing his plea, and continued to argue against applying both the two-level enhancement and the five-level enhancement. Thus, unlike in *Johnson*, Rolfsema cannot show a "radical" change in position or a pattern of vindictiveness subsequent to the assertion of his rights. The mere fact that the Government proposed an enhancement of Rolfsema's sentence after he asserted his right to counsel is not sufficient to establish vindictiveness. *See United States v. Pimienta–Redondo*, 874 F.2d 9, 13 (1st Cir. 1989) ("[M]ore than chronal proximity is required to bring *Pearce* into play; the presumption [of vindictiveness] does not apply indiscriminately to all instances of detrimental action treading close upon the heels of a defendant's exercise of some legal right."). As such, we find no error in the district court's application of the § 2G2.4(b)(4) enhancement.

## B. The § 2G2.4(b)(5)(D) Enhancement

■ Rolfsema also challenges the court's application of the five-level enhancement under U.S.S.G. § 2G2.4(b)(5)(D) (2003) for the possession of 600 or more images rather than the two-level enhancement under § 2G2.4(b)(2) for the possession of ten or more "items."

Prior to the PROTECT Act of 2003, the sentencing guidelines contained only a two-level enhancement under § 2G2.4 (b)(2) for ten or more items, which was understood to apply to the possession of ten or more graphic image files. *See, e.g., United States v. Fellows,* 157 F.3d 1197, 1201 (9th Cir.1998) (twenty computer images are twenty "items"); *United States v. Hall,* 142 F.3d 988, 998–99 (7th Cir.1998) (403 computer images are 403 "items"). After the Sentencing Commission amended the guidelines in 2004 pursuant to § 401(i)(b) of the PROTECT ACT, 108 P.L. 21; 117 Stat. 650, 672–73 (2003), the sentencing guidelines contained only § 2G2.2(b)(7)(D), which provided for a five-level enhancement for the possession of 600 or more images. Amendments to Sentencing Guidelines for U.S. Courts, 69 Fed. Reg. 28994, 29003 (2004). In the interim between the PROTECT Act of 2003 and the amendment of the guidelines, enhancements under both § 2G2.4(b)(2) and § 2G2.4(b)(5)(D) appeared to be applicable, which led to some confusion in the courts as to whether both enhancements could be applied simultaneously. *See* U.S.S.G. app. C (2004) (explaining that § 2G2.4(b)(2) and § 2G2.4(b)(5)(D) had been consolidated to avoid litigation over double-counting); *compare United States v. Lebovitz,* 401 F.3d 1263 (11th Cir.2005) (finding both enhancements applicable), *with United States v. González,* 445 F.3d 815, 818 (5th Cir.2006) (deciding that applying both enhancements would constitute impermissible double counting). The Sentencing Guidelines during this interim period are the guidelines applicable to Rolfsema.

Rolfsema, however, is not complaining of double-counting, but rather of the application of the new five-level enhancement under § 2G2.4(b)(5)(D) rather than the old two-level enhancement under § 2G2.4(b)(2). He argues that because there has been such confusion about these guidelines, the rule of lenity ought to apply, in which case we would resolve the confusion in favor of the defendant. *See, e.g., Pérez–Olivo v. Chávez,* 394 F.3d 45, 53 (1st Cir.2005), *citing United States v. Bass,* 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). The rule of lenity is not to be applied lightly: it applies "only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what Congress intended." *Reno v. Koray,* 515 U.S. 50, 65, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (internal quotation marks and citations omitted).

In the present case, we do not need to resort to guessing to determine what Congress intended. The proponent of the so-called "Feeney Amendment" to the PROTECT Act (which added § 2G2.4(b)(5)(D) to the sentencing guidelines) stated that it was offered to increase penalties "based on the amount of child pornography involved in the offense." 149 Cong. Rec. H2405, H2423 (2003). The conference report on the PROTECT Act also explicitly states that "[sentencing guideline] penalties are increased based on the amount of child pornography involved in the offense." H.R.Rep. No. 108–66 at 59 (2003). Furthermore, a number of courts ruling on this issue have found that, after the passage of the PROTECT Act, the five-level enhancement under § 2G2.4(b)(5)(D) should apply rather than the two-level enhancement under § 2G2.4(b)(2). *See, e.g., González,* 445 F.3d at 818; *United States*

*v. Long,* 425 F.3d 482, 485 (7th Cir.2005). Because the congressional intent here is clear, we see no need to apply the rule of lenity: after passage of the PROTECT Act, Congress intended for the five-level enhancement for 600 or more images under § 2G2.4(b)(5)(D) to apply. Accordingly, the district court did not err by increasing Rolfsema's total offense level by five for the possession of 600 or more images.

### C. *Rolfsema's Supplemental Reply Brief*

██ Rolfsema also filed a "supplemental *pro se* reply brief" in which he makes two distinct arguments. Rolfsema alleges that the Government provided no evidence at sentencing linking him to the sadomasochistic pictures. Any reading of the sentencing hearing transcript shows this contention to be meritless. After Rolfsema contested the content of the pictures at the sentencing hearing, the Government showed the court a sample of the pictures, to which the court responded: "[T]hose were clearly sadomasochistic pictures. If anything qualified, they did." Rolfsema then contested the ownership and quantity of the pictures. In response, the Government placed on the stand an FBI agent who testified that 100 CDs and approximately 900 floppy disks containing pictures with a paper attached that listed "Mark [Rolfsema]'s user IDs" were seized in Rolfsema's apartment. Rolfsema also argues that the Government tried to enhance his sentence for destruction of evidence without any support. The sentencing hearing, again, belies this assertion: the court clearly stated, "[T]here was destruction of evidence, which I do not find that you were responsible for." Accordingly, we reject both of Rolfsema's arguments regarding the sufficiency of the evidence for sentencing.

### III. *Conclusion*

For the reasons stated above, we affirm the decisions of the district court.

*Affirmed.*